# EXHIBIT A



**Corporate Creations Network Inc.**
801 US Highway 1 North Palm Beach, FL 33408

AbbVie Inc.                                                                                    02/15/2022
Ellen T. Klaus
AbbVie Inc.
1 North Waukegan Road
Bldg AP34
North Chicago IL 60064

# SERVICE OF PROCESS NOTICE

The following is a courtesy summary of the enclosed document(s).  **ALL information should be verified by you.**

Item: 2022-45

Note: Any questions regarding the substance of the matter described above, including the status or how to respond, should be directed to the contact set forth in line 12 below or to the court or government agency where the matter is being heard. IMPORTANT: All changes or updates to the SOP contact individuals or their contact information must be submitted in writing to SOPcontact@corpcreations.com. Any changes will become effective upon written confirmation of Corporate Creations.

| | | |
|---|---|---|
| 1. | **Entity Served:** | AbbVie Inc. |
| 2. | **Title of Action:** | Amanda Boudreaux and Bill Boudreaux vs. AbbVie Inc.; Global Allergan Aesthetics; et al. |
| 3. | **Document(s) Served:** | Civil Case Cover Sheet<br>Summons<br>Complaint for Damages and Demand for Jury Trial |
| 4. | **Court/Agency:** | Orange County Superior Court |
| 5. | **State Served:** | Illinois |
| 6. | **Case Number:** | 30-2022-01244227-CU-PL-CXC |
| 7. | **Case Type:** | Negligence/Strict Liability |
| 8. | **Method of Service:** | Email |
| 9. | **Date Received:** | Tuesday 02/15/2022 |
| 10. | **Date to Client:** | Tuesday 02/15/2022 |
| 11. | **# Days When Answer Due:**<br>**Answer Due Date:** | 30<br>Thursday 03/17/2022    CAUTION: Client is solely responsible for verifying the accuracy of the estimated Answer Due Date. To avoid missing a crucial deadline, we recommend immediately confirming in writing with opposing counsel that the date of the service in their records matches the Date Received. |
| 12. | **Sop Sender:**<br>(Name, City, State, and Phone Number) | Paul R. Kiesel<br>Beverly Hills, CA<br>(310) 854-4444 |
| 13. | **Shipped To Client By:** | Email Only with PDF Link |
| 14. | **Tracking Number:** | |
| 15. | **Handled By:** | 141 |
| 16. | **Notes:** | |

NOTE: This notice and the information above are provided for general informational purposes only and should not be considered a legal opinion. The client and their legal counsel are solely responsible for reviewing the service of process and verifying the accuracy of all information.  At Corporate Creations, we take pride in developing systems that effectively manage risk so our clients feel comfortable with the reliability of our service. We always deliver service of process so our clients avoid the risk of a default judgment. As registered agent, our role is to receive and forward service of process.  To decrease risk for our clients, it is not our role to determine the merits of whether service of process is valid and effective.  It is the role of legal counsel to assess whether service of process is invalid or defective. Registered agent services are provided by Corporate Creations Network Inc.

Electronically Filed by Superior Court of California, County of Orange, 02/04/2022 01:10:23 PM.
30-2022-01244227-CU-PL-CXC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Georgina Ramirez, Deputy Clerk.
Case 8:22-cv-00849-DOC-ADS Document 1-4 Filed 03/17/22 Page 3 of 88 Page ID #:11

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Paul R. Kiesel (SBN 119854) Melanie Meneses Palmer (SBN 286752)<br>Kiesel Law LLP, 8648 Wilshire Blvd., Beverly Hills, CA 90211-2910 | FOR COURT USE ONLY |

TELEPHONE NO.: 310-854-4444    FAX NO. *(Optional)*: 310-854-0812
E-MAIL ADDRESS: kiesel@kiesel.law; palmer@kiesel.law
ATTORNEY FOR *(Name)*: Plaintiffs Amanda Boudreaux and Bill Boudreaux

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
STREET ADDRESS: ~~751 West Santa Ana Blvd.~~ 700 CIVIC CENTER DR W
MAILING ADDRESS: ~~751 West Santa Ana Blvd.~~
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Civil Complex Center

CASE NAME:
Amanda Boudreaux, et al. v. ABBVIE, INC., et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| [x] **Unlimited** | [ ] **Limited** | [ ] Counter    [ ] Joinder | 30-2022-01244227-CU-PL-CXC |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant *(Cal. Rules of Court, rule 3.402)* | JUDGE: Judge James J. Di Cesare<br>DEPT.: C-16 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[x] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify)*: SIX (6)
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: February 4, 2022
Paul R. Kiesel
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**SUM-100**

# SUMMONS
### *(CITACION JUDICIAL)*

| | |
|---|---|
| | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ABBVIE, INC., a corporation; GLOBAL ALLERGAN AESTHETICS a corporation; ALLERGAN, INC.
a corporation;                                    (Additional Parties Attachment form is attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
AMANDA BOUDREAUX and BILL BOUDREAUX

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Orange County Superior Court - Civil Complex Center<br>751 West Santa Ana Blvd., Santa Ana, CA 92701    700 CIVIC CENTER DR W | CASE NUMBER: *(Número del Caso):*<br>30-2022-01244227-CU-PL-CXC<br><br>Judge James J. Di Cesare |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Paul R. Kiesel, Kiesel Law LLP, 8648 Wilshire Blvd., Beverly Hills, CA 90211, Tel. (310) 854-4444

| | | | | |
|---|---|---|---|---|
| DATE:<br>*(Fecha)*  02/04/2022 | DAVID H. YAMASAKI, Clerk of the Court | Clerk, by<br>*(Secretario)* | *Georgina Ramirez* | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

| | |
|---|---|
| [SEAL]<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ORANGE | **NOTICE TO THE PERSON SERVED:** You are served<br>1. ☐ as an individual defendant.<br>2. ☐ as the person sued under the fictitious name of *(specify):*<br><br>3. ☐ on behalf of *(specify):*<br>    under:  ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)<br>            ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)<br>            ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)<br>            ☐ other *(specify):*<br>4. ☐ by personal delivery on *(date):*                                **Page 1 of 1** |

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100  [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |

13

**SUM-200(A)**

| SHORT TITLE:<br>AMANDA BOUDREAUX, et al. v. ABBVIE, INC., a corporation, et al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

ALLERGAN USA, INC., a corporation; and SOFREGEN MEDICAL INC.; a corporation; and DOES 1 through 100 inclusive,

Page _____ of _____

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

14

Electronically Filed by Superior Court of California, County of Orange, 03/04/2022 01:10:33 PM.
30-2022-01244227-CU-PL-CXC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Georgina Ramirez, Deputy Clerk.
Case 8:22-cv-00424-DOC-ADS Document 1 Filed 03/17/22 Page 7 of 88 Page ID #:15

Paul R. Kiesel, State Bar No. 119854
  *kiesel@kiesel.law*
Melanie Meneses Palmer, State Bar No. 286752
  *palmer@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, Ca 90211-2910
Tel:    310-854-4444
Fax:   310-854-0812

Joel Bieber (*pro hac vice* to be submitted)
  *jbieber@joelbieber.com*
Melissa Hague (*pro hac vice* to be submitted)
  *mhague@joelbieber.com*
Melissa Ephron (*pro hac vice* to be submitted)
  *mephron@joelbieber.com*
**THE JOEL BIEBER FIRM**
6806 Paragon Pl Suite 100
Richmond, Virginia 23230
Tel:    804-532-4520

Attorneys for Plaintiffs
Amanda Boudreaux and Bill Boudreaux

Assigned for all Purposes

Judge James J. Di Cesare

c-16

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE, CIVIL COMPLEX CENTER

| | |
|---|---|
| AMANDA BOUDREAUX and BILL BOUDREAUX, <br><br>          Plaintiffs, <br><br>     v. <br><br> ABBVIE, INC., a corporation; GLOBAL ALLERGAN AESTHETICS a corporation; ALLERGAN, INC. a corporation; ALLERGAN USA, INC., a corporation; and SOFREGEN MEDICAL INC.; a corporation; and DOES 1 through 100 inclusive, <br><br>          Defendants. | **Case No.**    30-2022-01244227-CU-PL-CXC <br><br> **COMPLAINT FOR DAMAGES** <br><br>   **1. Negligence** <br>   **2. Strict Liability – Failure to Warn** <br>   **3. Strict Liability – Design Defect** <br>   **4. Fraud** <br>   **5. Breach of Express Warranties** <br>   **6. Breach of Implied Warranties** <br>   **7. Loss of Consortium** <br>   **8. Exemplary Damages** <br><br> **DEMAND FOR JURY TRIAL** |

00608427-3

Plaintiffs AMANDA BOUDREAUX (hereinafter, "Plaintiff") and BILL BOUDREAUX (collectively referred to as "Plaintiffs") by and through their counsel, allege upon information and belief:

## STATEMENT OF THE CASE

1.      This is a product liability action brought by Plaintiffs, AMANDA BOUDREAUX and BILL BOUDREAUX, for injuries arising out of the use of SERI Surgical Scaffold Mesh ("SERI Mesh") that was manufactured, designed, distributed, marketed, sold and warranted by Defendants and/or Defendants assumed or acquired liabilities for the manufacture and/or sale of SERI Mesh.

2.      SERI Mesh is a synthetic knitted, multifilament, bioengineered mesh medical device product manufactured from silk. It is marketed and promoted for use in the breast and for use with breast implants and tissue expanders in various types of breast surgeries, including, but not limited to, breast reconstruction, breast augmentation, mastopexy and breast revision procedures. Defendants represent that SERI bioresorbs through neovascularization and native tissue ingrowth resulting in the replacement of SERI with native tissue within 24 months of implantation.

3.      Defendants acquired SERI Mesh from Serica Technologies, Inc. ("Serica") in 2010 and thereafter initiated a post-market clinical trial involving the use of SERI Mesh in breast reconstruction procedures.  Although SERI Mesh was never cleared for use in the breast or for use with breast implants by the FDA, Defendants actively marketed and promoted SERI Mesh for use in breast procedures and to be used with breast implants.

4.      On May 29, 2015, FDA issued a WARNING LETTER to the Quality Assurance Director at Allergan, the manufacturer, distributor, promoter, marketer, and seller of SERI Mesh in the U.S. The WARNING LETTER stated that Defendant Allergan was selling SERI Mesh without marketing clearance or approval by FDA in violation of the Federal Food, Drug, and Cosmetic Act. FDA wrote that it had reviewed the Defendant's website, www.seri.com, and found that the SERI Surgical Scaffold was adulterated and marketed in violation of section 501(f)(1)(B) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 321(h) by Defendant Allergan.  In October 2015 the SERI Mesh website was revised such that it removed all promotion of SERI Mesh for use in any type of breast surgery.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

5.      On June 12, 2015, Plaintiff underwent a bilateral wedge mastopexy involving an implant exchange with Natrelle Style 68MP saline breast implants and bilateral insertion of SERI Mesh.  The SERI Mesh product catastrophically failed, causing Plaintiff to have multiple surgical procedures and eventually requiring her to undergo invasive bilateral revision procedures, involving extensive bilateral capsulectomies to remove the SERI Mesh.

## JURISDICTION AND VENUE

6.      The California Superior Court has jurisdiction over this action pursuant to California Constitution Article VI, Section 10, which grants the Superior Court "original jurisdiction in all causes except those given by statute to other trial courts." The Statutes under which this action is brought do not specify any other basis for jurisdiction.

7.      The California Superior Court has jurisdiction over the Defendants because, based on information and belief, each is a California resident, a corporation, and/or entity organized under the laws of the State of California, a foreign corporation or association authorized to do business in California and registered with the California Secretary of State or that has sufficient minimum contacts in California, or principle places of business in California or otherwise intentionally avails itself of the California market so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

8.      Venue is proper in this Court pursuant to California Code of Civil Procedure Section 395(a) because some of the Defendants – Global Allergan Aesthetics, Allergan USA Inc., and Allergan Inc. – are residents of Orange County.

9.      Furthermore, the Defendants have purposefully availed themselves of the benefits and the protections of the laws within the State of California. AbbVie, Inc., Global Allergan Aesthetics, Allergan USA Inc., and Allergan Inc. have had sufficient contacts such that the exercise of jurisdiction would be consistent with the traditional notions of fair play and substantial justice.

10.     Plaintiff seeks relief that is within the jurisdictional limits of this Court.

/ / /

**PARTIES**

11.     Plaintiffs, AMANDA BOUDREAUX and BILL BOUDREAUX, currently reside in Thibodaux, Louisiana, and, at all times relevant to this action, are and were citizens and residents of Louisiana.  Plaintiffs submit to the jurisdiction of this court and allege venue in this Court is proper.

12.     Upon information and belief, the following Defendants, at all times relevant to this action, designed, manufactured, marketed, distributed, sold, warranted and/or assumed or  acquired liabilities for the manufacture, marketing and/or sale of SERI Mesh that Defendants knew or reasonably should have known would be sold in the State of California or otherwise conducted business in the State.

13.     Defendant ABBVIE, INC. ("AbbVie") is a Delaware corporation with its headquarters in North Chicago, Illinois, and has multiple principal places of business throughout the United States, including Redwood City, California, South San Francisco, California, Sunnyvale, California, Worcester, Massachusetts, Cambridge, Massachusetts and, at all times relevant to this complaint, Irvine, California.  AbbVie is a global biopharmaceutical company employing over 30,000 employees and netting over $40 billion per year in sales.  AbbVie's portfolio includes more than 30 products and over 50 drugs in development.  In 2020, AbbVie acquired Allergan plc in a $63 billion transaction who, at all times material to this complaint, manufactured, designed, distributed, marketed, sold and warranted Seri Mesh.  Upon information and belief AbbVie assumed or acquired the liabilities for the manufacture, marketing and/or sale of SERI Mesh in the acquisition transaction.

14.     Defendant GLOBAL ALLERGAN AESTHETICS ("Allergan Aesthetics") is a Delaware corporation and global subsidiary of AbbVie with its headquarters and principal place of business located at 2525 Dupont Drive in Irvine, California.  Allergan Aesthetics manufactures, designs, distributes, markets, sells and warrants the aesthetic product lines acquired since AbbVie acquired Allergan and, upon information and belief, assumed or acquired the liabilities for the manufacture, marketing and/or sale of SERI Mesh in the acquisition transaction.

15.     Defendants AbbVie and Allergan Aesthetics (collectively referred to as "ABBVIE

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

Defendants") assumed or acquired the liabilities for the manufacture, design, distribution, marketing, sale and warranty of SERI Mesh and for the SERI Mesh that was implanted in Plaintiff and distributed through the stream of commerce throughout the United States, including California.

16.     Defendant ALLERGAN INC. ("Allergan") is a Delaware corporation with its administrative headquarters in Madison, New Jersey, and has multiple principal places of business throughout the United States, including, and at all times relevant to this complaint, Irvine, California. ALLERGAN INC. is a medical device company employing over 10,000 employees and netting over $2 billion per year in sales.  Allergan's portfolio includes plastic surgery products and medical devices.  ALLERGAN INC. manufactured, designed, distributed, marketed, sold and warranted the SERI Mesh that was implanted in Plaintiff. ALLERGAN INC. placed the SERI Mesh in the stream of commerce and throughout the United States, including, but not limited to, California. At all times relevant to this action, ALLERGAN INC. received and will continue to receive substantial monetary sums from the sales of the product. ALLERGAN INC. encouraged, engaged in, authorized, condoned and ratified the actions alleged in this Complaint through its officers, directors, managing agents and sales and marketing representatives.  Upon information and belief, ALLERGAN INC. was acquired or assumed by the AbbVie Defendants.

17.     Defendant ALLERGAN USA INC. ("Allergan USA") is a Delaware corporation with its headquarters and principal place of business located at 18581 Teller Ave in Irvine, California.  ALLERGAN USA INC. manufactured, designed, distributed, marketed, sold and warranted the SERI Mesh that was implanted in Plaintiff. ALLERGAN USA INC. placed the SERI Mesh in the stream of commerce and throughout the United States, including, but not limited to, California. At all times relevant to this action, ALLERGAN USA INC. received and will continue to receive substantial monetary sums from the sales of the product. ALLERGAN USA INC. encouraged, engaged in, authorized, condoned and ratified the actions alleged in this Complaint through its officers, directors, managing agents and sales and marketing representatives.  Upon information and belief, ALLERGAN USA INC. was acquired or assumed by the AbbVie Defendants.

18.     At all times relevant hereto, Allergan and Allergan USA (Collectively referred to as

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

"ALLERGAN Defendants") regularly conducted substantial business within California and specifically in Irvine, California, which included the design, manufacture, marketing, promotion, distribution and sale of the SERI Mesh, including the SERI Mesh implanted in Plaintiff, which was distributed through the stream of interstate commerce throughout the United States, including California.

19.     Defendant SOFREGEN MEDICAL, INC. ("SOFREGEN") is a Delaware corporation with its headquarters and principal place of business located at 250 Main Street in Cambridge Massachusetts.  SOFREGEN MEDICAL, INC. manufactures, designs, distributes, markets, sells and warrants SERI Mesh and continues to place SERI Mesh in the stream of commerce and throughout the United States, including, but not limited to, California.  At all times relevant to this action, SOFREGEN MEDICAL, INC. received and continues to receive substantial monetary sums from the sales of the product.

20.     In or about 2016, SOFREGEN acquired the SERI Mesh product from the ALLERGAN Defendants in an asset purchase agreement.

21.     At all times alleged herein, "Defendants" shall include any and all named or unnamed parent companies, parent corporations, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and any organizational units of any kind, their predecessors, successors, successors in interest, assignees, and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

22.     Plaintiff is informed and believes; and based thereon alleges, that in committing the acts alleged herein, each and every managing agent, agent, representative, and/or employee of the Defendants was working within the course and scope of said agency, representation and/or employment with the knowledge, consent, ratification, and authorization of the Defendants and their directors, officers, and/or managing agents.

23.     At all relevant times alleged herein, one or more of the corporate Defendants was, and now is, a corporation with its principal place of business in the State of California and, therefore, is a citizen of the State of California.

24.     The true names and/or capacities, whether individual, corporate, partnership,

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

associate, governmental, or otherwise, of Defendant DOES 1 through 100, inclusive, and each of them, are unknown to Plaintiff at this time; who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated herein as a DOE caused injuries and damages proximately thereby to Plaintiff as hereinafter alleged; and that each DOE Defendant is liable to the Plaintiff for the acts and omissions alleged herein below, and the resulting injuries to Plaintiff, and damages sustained by the Plaintiff.  Plaintiff will amend this Complaint to allege the true names and capacities of said DOE Defendants when the same are ascertained.

25.     Plaintiff is informed and believes; and thereon alleges, that at all times herein mentioned, each of the named Defendants and each of the DOE Defendants was the agent, servant, employee, and/or joint venturer of the other co- defendants and other DOE Defendants, and each of them, and at all said times, each named Defendant and each DOE Defendant was acting in the full course, scope and authority of said agency, service, employment, and/or joint venture.

26.     Plaintiff is informed and believes and alleges that at all times mentioned herein, Defendants and DOES 1 through 100, inclusive, ;and each of them, were also known as, formerly known as and/or were the successors and/or predecessors in interest/business/product line/or a portion thereof, assigns, a parent, a subsidiary (wholly or partially owned by, or the whole or partial owner), affiliate, partner, co-venturer, merged company, alter egos, agents, equitable trustees, and/or fiduciaries of and/or were members in an entity or entities engaged in the funding, researching, studying, manufacturing, fabricating, designing, developing, labeling, assembling, distributing, supplying, leasing, buying, offering for sale, selling, inspecting, servicing, contracting others for marketing, warranting, rebranding, manufacturing for others, packaging, and advertising of SERI Mesh. Defendants and DOES 1 through 100, inclusive, and each of them, are liable for the acts, omissions and tortious conduct of their successors and/or predecessors in interest/business/product line/or a portion thereof, assigns, parents, subsidiaries, affiliates, partners, co-venturers, merged companies, alter egos, agents, equitable trustees, fiduciaries,

1  and/or their alternate entities in that Defendants and DOES 1 through 100, inclusive, and

2  each of them, enjoy the goodwill originally attached to each such alternate entity, acquired

3  the assets or product line (or portion thereof), and in that there has been a virtual destruction

4  of Plaintiffs remedy against each such alternate entity, and that each such Defendant has

5  the ability to assume the risk spreading role of each such alternate entity.

6       27.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

7  mentioned, Defendants and DOES 1 through 100, inclusive, and each of them, were and are

8  corporations organized and existing under the laws of the State of California or the laws of

9  some state or foreign jurisdiction; that each of the said Defendants and DOE Defendants

10  were and are authorized to do and are doing business in the State of California and regularly

11  conducted business in California, including in Orange County.

12       28.    Upon information and belief, at all relevant times, Defendants and DOES 1

13  through I 00, and each of them, inclusive, were engaged in the business of researching,

14  developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or

15  introducing into interstate commerce and into the State of California, including in Orange

16  County, either directly or indirectly through third parties or related entities, SERI Mesh.

17       29.    At all relevant times, Defendants and DOES 1 through 100, inclusive, and

18  each of them, conducted regular and sustained business and engaged in substantial

19  commerce and business activity in the State of California, which included but was not

20  limited to selling, marketing and distributing SERI Mesh in the State of California, including

21  in Orange County.

22       30.    At all relevant times, Defendants and DOES 1 through 100, inclusive, and each

23  of them, expected or should have expected that their acts would have consequences within the

24  United States of America including the State of California, including Orange County, and said

25  Defendants derived and derive substantial revenue therefrom.

26                 **EQUITABLE TOLLING**

27       31.    Plaintiff has suffered injuries that have a latency period and do not arise until

28  years after being implanted with SERI Mesh. Plaintiff had no way of knowing about the risk of

serious injuries associated with SERI Mesh until made aware that Plaintiff's injuries, including but not limited to, skin rashes, infection, inflammatory reactions, swelling, pain, extreme fatigue, autoimmune and thyroid reactions, mesh perforation, non-healing wounds, and mesh migration, could be caused by SERI Mesh if it failed to bioresorb. The discovery rule applies, and the statute of limitations was tolled until the day Plaintiff knew or had reason to know that Plaintiff's injuries were linked to the SERI Mesh that was implanted and its failure to incorporate or bioresorb.

32. Within the time period of any applicable statute of limitations, Plaintiff could not have discovered through the exercise of reasonable diligence that SERI Mesh is injurious to human health.

33. Plaintiff did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with SERI Mesh nor would a reasonable and diligent investigation by Plaintiff have disclosed that SERI Mesh would cause Plaintiff's injuries.

34. The expiration of any applicable statute of limitations has been equitably tolled by reason of Defendants' fraudulent misrepresentations and fraudulent concealment and fraudulent conduct. Through affirmative misrepresentations and omissions, Defendants actively concealed from Plaintiff the true risks associated with SERI Mesh.

35. As a result of Defendants' actions, Plaintiff could not reasonably have known or learned through reasonable diligence that Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendants acts and omissions.

36. Defendants are estopped from relying on any statute of limitations because of their concealment of the truth regarding the safety of SERI Mesh and known dangers caused by its failure to incorporate or bioresorb. Defendants had a duty to disclose the true character, quality and nature of SERI Mesh because this was non-public information over which Defendants continue to have exclusive control. Defendants knew that this information was not available to Plaintiff, Plaintiff's medical providers and/or health facilities, yet Defendants failed to disclose the information to the public, including Plaintiff and Plaintiff's medical providers.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

37.     Defendants had the ability to and did spend enormous amounts of money in furtherance of the purposes of marketing and promoting a profitable product, notwithstanding the known or reasonably knowable risks. Plaintiff and medical professionals could not have afforded to and could not have possibly conducted studies to determine the nature, extent, and identity of related health risks and were forced to rely on Defendants' representations.

### SERI SCAFFOLD SURGICAL MESH GENERALLY

38.     SERI Mesh is a synthetic implantable mesh medical device that is marketed as bioresorbable.

39.     Biologic and non-biologic mesh products have been available on the medical device market for decades to treat tissue defects or deficiencies in many different parts of the body.

40.     Permanent synthetic mesh products, which are typically not bioresorbable, have been associated with a number of problems such as chronic inflammation, foreign body reaction, granulomas, migration, stiffness, fibrosis and infection; while biologic mesh, derived from either humans or animals and is bioresorbable, has been associated with problems relating to the sterilization of those materials.

41.     SERI Mesh was the first of its kind, a hybrid biological synthetic mesh, made from a synthetic silk-based material that undergoes a bioengineering process to make it bioresorbable.

42.     SERI Mesh was first launched by ALLERGAN Defendants in 2013 as a silk-derived biological mesh product intended for use in breast and abdominal surgeries to repair and replace soft tissue deficiencies where weaknesses or voids exist that require the addition of material to obtain the desired surgical outcome. This includes the reinforcement of soft tissue in plastic and reconstructive surgery and general soft tissue reconstruction.

43.     ALLERGAN Defendants claim that SERI Mesh differs from other mesh products on the market because it is a silk-based product that goes through a proprietary BIOSILK™ purified bioengineering process. This process is purportedly designed to remove sericin and other impurities from raw silk for an ultra-pure, sterile product. Other surgical silk-based products, such as sutures, contain sericin which can cause excessive inflammation and do not integrate into native tissue.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

44.     ALLERGAN Defendants claim that its proprietary BIOSILK™ process was intended to result in a mesh product that would integrate and bioresorb into the patient's native tissues. SERI Mesh is marketed as a fully bioresorbable and bioreplaceable mesh that facilitates the generation of native, well-vascularized tissue that is twice as thick as the mesh after 24 months.

45.     According to ALLERGAN Defendants, SERI Mesh is intended to facilitate neovascularization as early as two days after it is implanted eventually leading to the generation of native tissue over time. It is marketed as a replacement for soft tissue that can be used in the breast.

46.     During breast surgery, there is often a need for soft tissue replacement. Typically breast surgeons have used acellular dermal matrix (ADM), which are soft tissue matrix grafts, that provide a scaffold allowing the patient's own cells to repopulate and revascularize with the implanted tissue. The use of these grafts provides surgeons with a means of obtaining sufficient vascularized soft tissue. These grafts are often used in conjunction with either breast implants or tissue expanders implanted in the breast during surgery.

47.     SERI Mesh is considered a cross-over mesh product and offered as an alternative to ADM and other similar products because of its purported bioresorption and bioreplacement properties and its ability to promote neovascularization and native tissue generation.

**GENERAL ALLEGATIONS**

48.     Prior to the SERI Mesh being implanted in Plaintiff, Defendants knew and should have known that the device was defective and unreasonably dangerous for, inter alia, the following reasons:

a.     Defendants failed to conduct sufficient clinical testing, such as animal studies, to determine how the device would function once permanently implanted in the human body and specifically in the breast.

b.     Defendants failed to conduct sufficient clinical testing, such as animal studies, to determine how the device would function once permanently implanted in the human body and specifically in the breast after 24-months post-implantation.

c.     Defendants failed to conduct sufficient clinical testing, such as animal studies, to determine how the device would function once permanently implanted in the human

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

body with other devices commonly used in breast surgeries, such as tissue expanders and breast implant.

d.     Defendants knew and/or should have known SERI Mesh had a high rate of failure when implanted in the breast and Defendants knew and/or should have known that such failure exposed patients, including Plaintiff, to serious injuries.

e.     Upon information and belief, Defendants knew and/or should have known that certain conditions or procedures, such as multiple breast surgeries, poor breast tissue quality, post-implant fat injections could affect the safety, integrity and performance of the mesh.

£     Upon information and belief, Defendants knew and/or should have known that use of SERI Mesh in conjunction with other devices, including, breast implants and/or tissue expanders could affect the safety, integrity and performance of the mesh.

g.     Upon information and belief, Defendants knew and/or should have known that when implanted in the breast SERI Mesh can interfere with the imaging of breast tissue.

h.     Defendants knew or should have known that the risks associated with SERI Mesh were and are substantially higher than other alternative products when implanted in the breast.

i.     Further, Defendants knew or should have known that SERI Mesh contained conditions, which Defendants did not intend, resulting in the device not performing as safely as the ordinary intended consumer, including Plaintiff, would expect.

j.     Despite being aware of these risks, Defendants misrepresented, omitted and/or failed to provide adequate warnings of these risks or instructions for safe use.

k.     Despite being aware of these risks, Defendants failed to issue a recall of the SERI Mesh or otherwise notify customers of safer alternative products that were and are available.

## THE FDA'S 510(k) CLEARANCE PROCESS

49.     Upon information and belief, ALLERGAN Defendants acquired SERI Mesh from Serica Technologies, Inc. ("Serica") in 2010. It then obtained "clearance" in 2013 under Section

510(k) of the Medical Amendments Act to the Federal Food, Drug and Cosmetic Act to market SERI Mesh as a transitory scaffold for soft tissue support by claiming that it was substantially similar in respect to safety, design and materials as other similar products already available on the market.

50.     Section 510(k) permits the marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of said device. The FDA explained the difference between the 510(k) process and the more rigorous "premarket approval" ("PMA") process in its amicus brief filed with the Third Circuit in *Horn v. Thoratec, Corp.*, which the Horn court quoted from:

A manufacturer can obtain an FDA finding of 'substantial equivalence' by submitting a pre-market notification to the agency in accordance with Section 510(k) of the [Act]. 21 U.S.C. § 360(k). A device found to be 'substantially equivalent' to a predicate device is said to be 'cleared' by FDA (as opposed to 'approved' by the agency under a PMA). A pre-market notification submitted under Section 510(k) is thus entirely different from a PMA, which must include data sufficient to demonstrate to FDA that the device is safe and effective. *See Lohr*, 518 U.S. at 478-79, 116 S.Ct. 2240 ("The § 510(k) notification process is by no means comparable to the PMA process.").

51.     In *Medtronic, Inc. v. Lohr*, the U.S. Supreme Court similarly described the 510(k) process, observing as follows:

If the FDA concludes on the basis of the [manufacturer's]§ 510(k) notification that the device is "substantially equivalent" to a pre- existing device, it can be marketed without further regulatory analysis. [... ] The § 510(k) notification process is by no means comparable to the PMA process; in contrast to the 1,200 hours necessary to complete PMA review, the 510(k) review is completed in average of 20 hours. [... ] As one commentator noted: "The attraction of substantial equivalence to manufacturers is clear. Section 510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets processed quickly.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

518 U.S. 470, 478-79 (1996) (quoting Adler, The 1976 Medical Device Amendments: A Step in the Right Direction Needs Another Step in the Right Direction, 43 Food Drug Cosm. L.J. 511, 516 (1988)).

52.     No clinical testing is required under this process.

53.     Clearance for sale under the 510(k) process does not equate to FDA approval of the cleared device.

54.     In 2012, at the request of the FDA, the National Institute of Health (NIH) conducted a thorough review of the 510(k) process, coming to the following major conclusion:

> The 510(k) clearance process is not intended to evaluate the safety and effectiveness of medical devices with some exceptions. The 510(k) process cannot be transformed into a pre-market evaluation of safety and effectiveness so long as the standard for clearance is substantial equivalence to any previously cleared device.

55.     The NIH explained, "The assessment of substantial equivalence does not require an independent demonstration that the new device provides a 'reasonable assurance of safety and effectiveness.'" Further, the NIH even pointed out that the classification of predicate devices approved for sale prior to the 1976 MDA "did not include any evaluation of the safety and effectiveness of individual medical devices ... Thus, it is common for devices to be cleared through the 510(k) program by being found substantially equivalent to devices that were never individually evaluated for safety and effectiveness, either through the original device classification program or through the 510(k) process."

56.     Pursuant to *Wyeth v. Levine*, 555 U.S. 555 (2009), once a product is cleared, "the manufacturer remains under an obligation to investigate and report any adverse events associated with the drug... and must periodically submit any new information that may affect the FDA's previous conclusions about the safety, effectiveness, or labeling..." This obligation extends to post-market monitoring of adverse events/complaints.

57.     SERI Mesh has never undergone the more rigorous PMA approval process but was instead cleared in 2008 under 510(k) Premarket Notification in an application submitted by Serica.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

Serica cited four predicate devices as being substantially similar and represented that the biocompatibility and bioresorption properties of the device were substantially similar to the predicate devices. Serica represented that SERI Mesh was a silk mesh with bioresorption characteristics similar to the predicate mesh, Vicryl Mesh. However, none of the predicate devices, including Vicryl Mesh, were made from purified silk materials or marketed as a replacement for soft tissue.

58.     ALLERGAN Defendants resubmitted its 510(k) application for SERI Mesh in 2013. When it did so, it then cited three predicate devices as being substantially similar: SERI Surgical Scaffold submitted by Serica in 2008, TEI Biosciences SurgiMend Collagen Matrix ("TEI") and Ethicon Vicryl Knitted Mesh ("Vicryl").  At the time of the FDA's clearance of ALLERGAN Defendants' application, none of the predicate devices cited had been cleared for use in the breast or for use with breast implants or tissue expanders. Neither TEI nor Vicryl were made from purified silk and claimed bioreplacement and generation of new tissue. TEI is a biologic product derived from fetal or neonatal bovine dermis and Vicryl is a synthetic absorbable mesh derived from glycolic and lactic acid.

59.     The intended use for SERI Mesh cleared by the FDA under K123128 was for support and repair to *reinforce* deficiencies where weaknesses or voids exist. It included the r*einforcement* of soft tissue in plastic and reconstructive surgery. However, after 510(k) clearance, Defendants marketed SERI Mesh for use in breast surgeries generally for the *bioreplacement* of native tissues in the breast, including, but not limited to, breast reconstruction, breast augmentation, mastopexy and breast revision procedures.

60.     ALLERGAN Defendants did not claim the intended use for the device was breast surgeries in their 510(k) application. They also did not claim the intended use could be in conjunction with other devices such as breast implants or tissue expanders.

61.     Defendants, and each of them, researched, developed, tested, designed, set specifications for, licensed, manufactured, prepared, compounded, assembled, packaged, processed, labeled, marketed, promoted, distributed and/or sold SERI Mesh to healthcare professionals and the consuming public, including Plaintiff and her surgeon.

62.     The design and manufacturing flaws of SERI Mesh make it a defective and unreasonably dangerous product. The SERI Mesh is designed and manufactured in such a way that when exposed to expected and reasonably foreseeable in-vivo conditions, particularly in breast surgeries, the mesh, inter alia, is associated with high rates of mesh/implant loss, inflammatory reaction, infection, seroma, hematoma, granuloma, capsular contracture, wound dehiscence, extrusion, skin flap necrosis/ulceration and lack integration.

63.     Defendants, and each of them, represented that the bioreplaceable and bioresorbable design of the SERI Mesh allowed for full mesh integration and the generation of newer stronger native tissue within 24 months, while in reality, the SERI Mesh regularly fails to bioresorb and is not replaced with newer stronger native tissue.

64.     Defendants, and each of them, represented that SERI Mesh was transitory, when in fact, there was no scientific or medical support for that claim and SERI Mesh is not a transitory mesh when implanted in the breast or when implanted with breast implants or tissue expanders.

65.     The fact that Defendants allowed this device to proceed to the market indicates that they failed to establish and maintain an appropriate Quality System concerning the design and risk analysis.

66.     A medical device manufacturer is required, at a minimum, to undertake such research and testing to understand the anatomy of where a device will be implanted and understand the conditions the device may be exposed to once in the human body. This design input must then be used to determine the minimum safety requirements or attributes the device must have to meet user needs. Defendants failed to undertake such efforts in these regards.

67.     Prior to bringing a product to market, a medical device manufacturer must also conduct sufficient testing under real world or simulated use conditions to ensure that the device will meet user needs even when exposed to reasonably foreseeable worst-case conditions. Defendants failed to adequately establish and maintain such policies, procedures or protocols with respect to SERI Mesh.

68.     Once placed on the market, Defendants' post-market surveillance system revealed, or should have revealed to Defendants that SERI Mesh, when used in the breast or with breast

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

implants or tissue expanders, was unreasonably dangerous and substantially more prone to fail or malfunction and cause great bodily harm/or death to patients, including Plaintiff, compared to other available products.

69.     MAUDE (Manufacturer and User Facility Device Experience) is a database maintained by the FDA to house medical device reports submitted by mandatory reporters (such as manufacturers and device user facilities) and voluntary reporters (such as health care providers and patients). Shortly after market release of the SERI Mesh, Defendants began receiving large numbers of adverse event reports ("AER") from health care providers reporting complications associated with SERI Mesh implanted in the breast. Defendants, and each of them, also received large numbers of AERs reporting wound dehiscence, granuloma formation, extrusion, inflammatory reaction and lack of mesh integration among other complications. These device complications were often associated with reports requiring revision surgery, and explant of non-integrated SERI Mesh.

70.     These failures and resulting injuries are attributable, in part, to the fact that SERI Mesh, including the mesh implanted into Plaintiff, does not fully integrate and generate new stronger native tissue when utilized in breast surgeries, often resulting in an inflammatory reaction.

71.     As a minimum safety requirement, medical device manufacturers must establish and maintain post-market procedures to timely identify the cause of device failures and other quality problems and to take adequate corrective action to prevent the recurrence of these problems. Defendants, however, failed to identify or acknowledge these device failures or determine their causes. Defendants also failed to take timely and adequate remedial measures to correct known design and manufacturing defects with the SERI Mesh.

## PROMOTION OF SERI MESH FOR USE IN BREAST SURGERIES

72.     Defendants engaged in a marketing scheme whereby they concealed material risk information and promoted unproven benefits of the SERI Mesh in order to induce health care providers, including Plaintiff's prescribing and implanting surgeon, to purchase and use the SERI Mesh in breast procedures.

73.     Upon information and belief, in 2013, Defendants began marketing SERI Mesh for use in breast and abdominal surgeries, including breast reconstruction, breast augmentation,

16

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

mastopexy and breast revision procedures and for use with breast implants and tissue expanders. The information distributed by Defendants to the Plaintiff and/or her surgeon was in the form of reports, press releases, advertising campaigns, labeling materials, print advertisements, a dedicated website, www.seri.com, brochures, advertorials, and promotional videos contained material representations, instructions for use and direct communications from sales representatives and executives, *inter alia*, as set forth in further detail herein.

74. Defendants over marketed and represented that SERI Mesh was safe and effective for use in all types of breast surgeries, including the type of breast surgery performed on the Plaintiff and that the device was bioresorbable and would bioreplace the soft tissue through the generation of newer, stronger native tissue. The medical literature and the hundreds of adverse event reports associated with the device reported to Defendants, alone, have proven these claims as false.

75. Defendants aggressively marketed and promoted SERI Mesh to plastic surgeons to be used along with Allergan breast implants in various breast procedures despite the fact that SERI mesh was not indicated for use in the breast or for use with breast implants or tissue expanders.

76. Plaintiff's surgeon who prescribed SERI Mesh for use in her breast surgery reviewed marketing and labeling materials regarding SERI Mesh, which were created and distributed by Defendants. These marketing and labeling materials and the direct representations from the Defendants' representatives and executives to Plaintiff's surgeon misrepresented and concealed the risks and the benefits of SERI Mesh. These representations were made within this jurisdiction, including Orange County.

77. Prior to August 2015, ALLERGAN Defendants' website, www.seri.com, had a section called "FAQ" and in response to the question, "In what areas of the body can SERI Surgical Scaffold be used?" ALLERGAN identified the breast and the abdomen by listing a number of different breast and abdominal surgeries that *may* benefit from the use of SERI Mesh. Included in this list was the general reference to "breast revision surgery."

78. Prior to August 2015, ALLERGAN Defendants' website also included a section called "Surgeon Experience" that listed a number of case reviews from surgeons. All of the case reviews ALLERGAN Defendants listed on the website were breast or abdominal procedures.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

79.     Defendants also promoted the use of SERI Mesh through the production of videos of live surgeries with surgeons participating in the Allergan sponsored SeriScaffold SURE Study who were using SERI Mesh in breast reconstruction surgeries with tissue expanders and breast implants. These videos were produced by Defendants and used to market and promote the use of SERI Mesh in breast procedures and with breast implants and tissue expanders. Defendants misled prescribing surgeons and consumers, including Plaintiff and her surgeon, that breast procedures and use with breast implants and tissue expanders were intended uses and that SERI Mesh would replace soft tissue and bioresorb. In fact, the available evidence indicates otherwise.

80.     Prior to August 2015, ALLERGAN Defendants' website touted the *bioreplacement* characteristics of SERI Mesh by claiming it facilitated the generation of native, well-vascularized tissue that is twice the starting thickness of the scaffold alone at 24 months. It also claimed substantial bioresorption over time.

81.     Prior to August 2015, ALLERGAN Defendants' website claimed evidence of newly generated thickened tissue after just three months of implanting SERI Mesh. It further claimed at 24 months "most" of the SERI Mesh is bioreplaced with native, well-vascularized tissue; meaning that the thickness comes from newly generated tissue as oppose to the mesh. Defendants claimed that as the SERI Mesh bioresorbed so that the support and strength gradually shifted from the SERI Mesh to the newly ingrown tissue. The strength of the newly generated tissue was represented as two times the average strength of ovine fascia. However, Defendants failed to disclose that there was no medical or scientific support for these claims.

82.     Prior to August 2015, ALLERGAN Defendants' website represented SERI Mesh as "not your ordinary silk," that "all silks are not created equal" and that SERI Mesh was "different" from ordinary surgical silk. Commercial silk sutures are made from fibrous proteins that are processed, braided and often have a coating on them that can cause them to become encapsulated and unable to integrate with native tissue. ALLERGAN's website claimed its proprietary bioengineering process removes impurities that cause inflammation allowing integration and neovascularization as the SERI Mesh is replaced with newly ingrown tissue composed of collagen and blood vessels over time. Without medical and/or scientific support, Defendants represented that

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

this bioreplacement and the bioresorption process would be nearly 100% complete at 24 months.

83. Despite Defendants representations of substantial equivalence in the 510(k) application; prior to August 2015, ALLERGAN Defendants represented on its website that SERI Mesh was the "first and only silk-derived biological scaffold."

84. Defendants' promotional materials, including, but not limited to their website, brochures, advertorials, and promotional videos targeting plastic surgeons, including Plaintiff's surgeon, promoted the use of SERI Mesh in breast surgeries for use along with breast implants and breast tissue expanders, including the type of breast surgery performed on Plaintiff.

85. Without supporting medical or scientific evidence, Defendants represented in their promotional materials that SERI Mesh was safe and effective when used in the breast and when used with breast implants or tissue expanders.

86. The marketing and labeling materials created and distributed by Defendants to Plaintiff and her surgeon also intentionally concealed the risks associated with SERI Mesh, including, but not limited to, mesh/implant loss, inflammatory reaction, infection, seroma, hematoma, granuloma, capsular contracture, wound dehiscence, extrusion, skin flap necrosis/ulceration, lack of mesh integration or that these failures were known to be causing severe injuries and/or interfering with breast tissue imaging. These materials also purposefully omitted information known to these defendants that SERI Mesh posed higher risks of the aforementioned failures and adverse events.

87. Had Defendants not engaged in a marketing scheme directed to Plaintiff and/or her surgeon, as described herein, Plaintiff's surgeon would not have prescribed SERI Mesh to the Plaintiff. Additionally, Plaintiff's surgeon, at a minimum, would have passed complete and accurate risk/benefit information to the Plaintiff as part of the informed consent process, and the Plaintiff would not have consented to the use of SERI Mesh in her breast surgery.

88. For the forgoing reasons, Defendants' SERI Mesh product remains extremely dangerous, defective and unsafe for use by the general public, including the Plaintiff, for its intended and reasonably foreseeable purposes.

/ / /

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

89.     Prior to the date on which Plaintiff was implanted with Defendants' SERI Mesh, Defendants knew that their SERI Mesh product was defective and extremely dangerous and unsafe for use by the public for its intended purposes. The wrongful conduct described herein was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendants.

90.     Defendants nonetheless failed to take appropriate action to cure the nature of the defects inherent in SERI Mesh or to appropriately warn users of these devices or their physicians of the dangerous characteristics of these devices. Defendants thereby acted with malice towards Plaintiff, and therefore Plaintiff accordingly requests that the trier of fact, in the exercise of its sound discretion, should award Plaintiff additional damages for the sake of example and for the purpose of punishing Defendants for their conduct, in an amount sufficiently calculated to be an example to others to not engage in such malicious and wrongful acts, and to deter Defendants from engaging in similar conduct in the future.

## FDA WARNING OF UNBRANDED AND MISADULTRATED MARKETING OF SERI SCAFFOLD SURGICAL MESH

91.     Upon information and belief, Defendants engaged in marketing and promotional activities that were not only false and misleading as to safety and efficacy, but also were designed to illegally expand the use of SERI Mesh for off-label indications, i.e., indications for which the products had not been cleared by the FDA. This off-label promotion, without scientific proof of the device's safety and efficacy, was an effort to increase Defendants' sales and profits at the expense of the safety, health, and well-being of the public, including Plaintiff.

92.     On May 29, 2015 the FDA sent a warning letter to ALLERGAN Defendants advising it that its marketing of the SERI Mesh was without marketing clearance or approval by the FDA.

93.     Upon information and belief, based on the FDA's review ALLERGAN Defendant's website, www.seri.com, the FDA determined that the SERI Mesh device was both adulterated under section 501(f)(l)(B) of the Act, 21 U.S.C. § 35l(f)(l)(B) and misbranded under section 502(0) of the Act, 21 U.S.C. § 352(0).

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

94.     Upon information and belief, the FDA warned that SERI Mesh was adulterated because Defendants did not have an approved application for premarket approval (PMA) in effect pursuant to section 515(a) of the Act, 21 U.S.C. § 360e(a), or an approved application for an investigational device exemption (IDE) under section 520(g) of the Act, 21 U.S.C. § 360j(g) for the SERI Mesh device as described and marketed.

95.     Upon information and belief, the FDA further warned that the device was misbranded because Defendants introduced or delivered for introduction into interstate commerce for commercial distribution this device with major changes or modifications to the intended use without submitting a new premarket notification to the FDA as required by section 510(k) of the Act, 21 U.S.C. § 360(k) and 21 CFR 807.81(a)(3)(ii).

96.     The FDA warning letter stated that Defendants' SERI Mesh was cleared under Kl23128 for the following indications: "for use as a transitory scaffold for soft tissue support and repair to reinforce deficiencies where weakness or voids exist that require the addition of material to obtain the desired outcome. This includes reinforcement of soft tissue in plastic and reconstructive surgery, and general soft tissue reconstruction." It further stated that Defendants' promotion of SERI Mesh provided evidence that the device was intended for "breast surgery applications," which constituted a major change or modification of its intended use, for which Defendants lack clearance or approval.

97.     The FDA cited specific language on Defendants' website as an example of the misbranded and adulterated promotion of SERI Mesh outside the cleared indications.  The FDA Warning Letter specifically stated:

**However, your firm's promotion of the device provides evidence that the device is intended for breast surgery applications, which would constitute a major change or modification to its intended use, for which your firm lacks clearance or approval. Examples include:**

**"Specific procedures which may benefit from the use of SERI Surgical Scaffold for soft tissue support and repair include:**

**• Breast revision surgery**

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

• **Mastopexy with or without augmentation**

• **Breast reductions ...**

• **... Muscle flap reinforcement"**

98.     Upon information and belief, ALLERGAN Defendants' website, www.seri.com, was taken down around August 2015 and the URL was redirected to www.Allergan.com. In October 2015 www.seri.com was relaunched without any promotion of SERI Mesh for use in any type of breast surgery.

99.     On or about March 2016 the FDA confirmed that they reviewed Defendants' corrective actions in response to their Warning Letter and the violations contained within the letter were cured.

100.    In or around November 2016 Sofregen acquired SERI Mesh from ALLERGAN Defendants for an undisclosed amount and Sofregen continues to design, develop, manufacture, test, market, promote, distribute and sell SERI Mesh to healthcare providers and consumers.

101.    As a result of Defendants' off-label promotion and marketing of SERI Mesh, Plaintiff's SERI Mesh was defective and failed, resulting in injuries to the Plaintiff. If Defendants had complied with the federal requirements and only promoted SERI Mesh for its cleared indications for use, Plaintiff's surgeon would not have prescribed it for use in Plaintiff's breast surgery and Plaintiff would not have suffered injuries from the failed SERI Mesh.

**HARM CAUSED TO MRS. BOUDREAUX**

102.    On June 12, 2015, Plaintiff underwent a bilateral wedge mastopexy involving an implant exchange with Natrelle Style 68MP saline breast implants and bilateral insertion of SERI Mesh.

103.    Plaintiff's surgeon implanted the SERI Mesh in accordance with the instructions for use and implantations instructions provided with the product by Defendants.

104.    After the SERI Mesh was implanted, Plaintiff developed fluid accumulation underneath the skin of her breast, pain, and redness.

105.    Post implantation of SERI Mesh Plaintiff had to undergo an aspiration due to fluid accumulation.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

106. Post implantation of the SERI Mesh Plaintiff had to undergo a surgical procedure whereby areas of the breast where fluid accumulation was present were incised and drained. During this procedure foreign material from her right breast was resected.

107. In January 2016 Plaintiff underwent another surgical procedure at which time the surgeon removed a small piece of SERI that had migrated and failed to integrate.

108. Plaintiff continued to suffer from multiple infections, a rash on her chest, breasts and back, swelling, and extreme pain in her breasts.

109. On May 13, 2021, Plaintiff underwent an invasive bilateral breast surgery at which time the surgeon removed both breast implants, performed extensive capsulectomies bilaterally and removed the SERI Mesh bilaterally by performing blunt and sharp dissections through the use of Bovie electrocautery.

110. At the time of the May 13, 2021 it was discovered that the SERI Mesh was intact and had not bioresorbed or integrated.

111. As a result of the failure of the SERI Mesh and subsequent removal of the mesh, Plaintiff's has been forced to undergo multiple surgeries leaving both of her breasts permanently disfigured and has suffered extreme pain and suffering in both breasts. Plaintiff remains at risk for further complications caused by SERI Mesh that could not be dissected. Plaintiff further suffered and suffers from injuries, including but not limited to, inflammatory reactions, swelling, extreme fatigue, autoimmune and thyroid reactions, and non-healing wounds.

**FAILURE TO WARN OF THE DANGERS ASSOCIATED WITH SERI MESH**

112. Defendants marketed SERI Mesh to plastic surgeons including Plaintiff's plastic surgeon.

113. Defendants had the ability to inform surgeons of developing problems or defects in its devices through communications e-mails, letters, recalls, warnings in product inserts, and/or through its product representatives, who communicate, interact, and work with surgeons.

114. The design and the manufacturing process of SERI Mesh is defective in that the device is associated with an unacceptably high failure rates of mesh/implant loss, inflammatory reaction, infection, seroma, hematoma, granuloma, capsular contracture, wound dehiscence,

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1   extrusion, skin flap necrosis/ulceration and lack of integration when implanted in the breast and

2   breast surgery with a tissue expander or breast implant.

3       115.    During the time period when relevant to the allegations contained herein, Defendants

4   stated in the SERI Mesh IFU that "SERI® Surgical Scaffold is designed to slowly bioresorb in

5   parallel to neovascularization and native tissue ingrowth which results in eventual replacement of

6   SERI® Surgical Scaffold with native tissue. As bioresorption occurs, load bearing responsibility is

7   transferred to the new tissue ingrowth such that mechanical integrity is maintained at the site." This

8   statement is false, or at least misleading, as the SERI Mesh does not fully bioresorb when implanted

9   in the breast with a tissue expander or breast implant.

10      116.    The SERI Mesh IFU has a section for contraindications, which lists "1. Patients with

11  a known allergy to silk. 2. Contraindicated for direct contact with bowel or viscera where formation

12  of adhesions may occur."

13      117.    The SERI Mesh IFU has a section for adverse reactions, which lists "Adverse

14  reactions are those typically associated with surgically implantable materials... " However, SERI

15  Mesh has been associated with many potential adverse reactions, such as mesh/implant loss,

16  inflammatory reaction, infection, seroma, hematoma, granuloma, capsular contracture, wound

17  dehiscence, extrusion, skin flap necrosis/ulceration and lack of integration that other surgically

18  implantable materials do not present.  Additionally, the design and manufacture of SERI Mesh

19  increases the rate of adverse reactions such as, mesh/implant loss, inflammatory reaction, infection,

20  seroma, hematoma, granuloma, capsular contracture, wound dehiscence, extrusion, skin flap

21  necrosis/ulceration and lack of integration and other additional injuries when implanted in the breast

22  or with a tissue expander or breast implant.

23      118.    Defendants failed to warn that SERI Mesh should not be used in the type of breast

24  surgery Plaintiff had.

25      119.    Defendants failed to warn that SERI Mesh should not be used with other devices

26  commonly used in breast surgery such as tissue expanders and breast implants.

27      120.    Defendants failed to warn that SERI Mesh should not be implanted in patients with

28  poor tissue quality.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

121.   Defendants failed to warn that SERI Mesh can interfere with imaging of breast tissue.

122.   Defendants failed to warn that SERI Mesh can ball up.

123.   Defendants failed to warn that SERI Mesh can migrate.

124.   Defendants never performed any clinical trials and/or studies prior to the marketing of SERI Mesh that had an outcome measure for bioreplacement of soft tissue and bioresorption of SERI Mesh in breast tissue.

125.   Defendants did not fully and/or adequately test the configuration of this new hybrid purified silk mesh that was implanted in Plaintiff.

126.   Defendants continue to market SERI Mesh without any of the aforementioned warnings.

127.   Reassurances of device safety for use in breast surgeries were made through direct promotional contact by Defendants' sales representatives, through word-of-mouth from Defendants' surgeon consultants and/or through industry targeted promotional materials.

128.   Despite these reassurances, the defective design and manufacture of the SERI Mesh continued to result in mesh/implant loss, inflammatory reaction, infection, seroma, hematoma, granuloma, capsular contracture, wound dehiscence, extrusion, skin flap necrosis/ulceration, lack of integration and additional complications.

129.   Defendants were aware or should have been aware that design and manufacture of SERI Mesh was defective and SERI Mesh did not replace soft tissue and did not bioresorb causing complications of mesh/implant loss, inflammatory reaction, infection, seroma, hematoma, granuloma, capsular contracture, wound dehiscence, extrusion, skin flap necrosis/ulceration, and lack of integration. Nonetheless, Defendants employed the design and manufacture in its SERI Mesh in reckless disregard for the safety of patients, including the Plaintiff.

130.   Moreover, despite direct knowledge of significant adverse events reported by patients and physicians, as well as awareness of failures that have been reported in literature and published clinical trials, Defendants have continued to market SERI Mesh as being safe and effective for use in breast surgeries.

131.   From the time that Defendants first began selling SERI Mesh in the United States

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

through today, product labeling and product information failed to contain adequate information, instructions, and warnings concerning the following: implantation of the SERI Mesh, specifically its propensity not to fully bioresorb and failure to bioreplace soft tissue with new stronger native tissue in the breast, and the elevated rate of mesh/implant loss, inflammatory reaction, infection, seroma, hematoma, granuloma, capsular contracture, wound dehiscence, extrusion, skin flap necrosis/ulceration, and lack of integration, and other injuries that occur at a higher rate than other surgically implanted devices.

### CORPORATE VICARIOUS LIABILITY

132.    At all times herein mentioned, the Defendants were agents, servants, partners, aiders and abettors, co-conspirators and/or joint venturers, and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to each other, knowing that their collective conduct constituted a breach of duty owed to the Plaintiff.

133.    There exists and, at all times herein mentioned, there existed a unity of interest in ownership between the Defendants such that any individuality and separateness between them has ceased and these Defendants are alter egos. Adherence to the fiction of the separate existence of these Defendants as entities distinct from each other will permit an abuse of the corporate privilege and would sanction a fraud and/or would promote injustice.

134.    At all times herein mentioned, the Defendants, and each of them, were engaged in the business of, or were successors in interest to, entities engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing and/or advertising for sale, and selling of the product for use by the Plaintiff. As such, each Defendant is individually, as wen as jointly and severally, liable to the Plaintiff for her damages.

135.    At all times herein mentioned, the officers and/or directors of the Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care and diligence should have known, of the hazards and dangerous propensities of said products, and thereby actively

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

participated in the tortious conduct that resulted in the injuries suffered by the Plaintiff.

## COUNT I: NEGLIGENCE

### (AGAINST ALL DEFENDANTS)

136.   Additionally, or in the alternative, if same be necessary, Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

137.   Defendants, directly or indirectly, caused SERI Mesh to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiff and Plaintiff's surgeon.  At all relevant times, Defendants designed, researched, developed, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and distributed the SERI Mesh within California and aimed at California consumers and plastic surgery market.   ALLERGAN Defendants were, at all relevant times, involved in the design, manufacturer, marketing, sale and distribution of SERI Mesh marketed and sold in California.

138.   Defendants had a duty to exercise reasonable care in the development, research testing, design, manufacture, inspection, marketing, labeling, promotion, advertisement, supply, packaging, distribution, and sale of the SERI Mesh including the duty to take all reasonable steps necessary to manufacture, promote and/or sell a product that was not unreasonably dangerous to consumers and users of the product.

139.   At all relevant times, Defendants had a duty to exercise reasonable care in the marketing, advertisement, and sale of SERI Mesh. Defendants' duty of care owed to consumers and the general public and the medical community, including Plaintiff and Plaintiff's surgeon, included providing accurate, true, and correct information concerning the risks of using SERI Mesh in the breast or with breast implants or tissue expanders and appropriate, complete, and accurate warnings concerning the potential adverse effects of the use of SERI Mesh when used in the breast or with breast implants or tissue expanders.

140.   At all relevant times, Defendants knew or, in the exercise of reasonable care, should have known that SERI Mesh was dangerous or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

141.    At all relevant times, Defendants knew or, in the exercise of reasonable care, should have known that SERI Mesh could cause or be associated with Plaintiff's injuries, and thus, create a dangerous and unreasonable risk of injury to the users of this product, including Plaintiff.

142.    At all relevant times, Defendants knew or, in the exercise of reasonable care, should have known that SERI Mesh:

a.    Was designed and manufactured in such a manner so as to present an unreasonable risk of mesh/implant loss when implanted in the breast;

b.    Was designed and manufactured in such a manner so as to present an unreasonable risk of inflammatory reactions;

c.    Was designed and manufactured so as to present an unreasonable risk of seroma when implanted in the breast;

d.    Was designed and manufactured so as to present an unreasonable risk of hematoma when implanted in the breast;

e.    Was designed and manufactured so as to present an unreasonable risk of capsular contracture when implanted in the breast;

f.    Was designed and manufactured so as to present an unreasonable risk of wound dehiscence when implanted in the breast;

g.    Was designed and manufactured so as to present an unreasonable risk of extrusion of the mesh when implanted in the breast;

h.    Was designed and manufactured so as to present an unreasonable risk of skin flap necrosis/ulceration when implanted in the breast;

i.    Was designed and manufactured so as to present an unreasonable risk of lack of integration of the mesh when implanted in the breast;

j.    Was not appropriately or adequately tested before distribution;

k.    Contained unreasonably dangerous design defects, utilizing purified silk, which increases the risk of skin loss during the integration process when implanted in the breast;

l.    Contained unreasonably dangerous design defects, utilizing a small pore size

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

00608427-3

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

and construction of the mesh material that made the resulted in a stiff mesh with inadequate density and burst strength;

m.      Was unreasonably dangerous, due to the materials used in the manufacturing process and the proprietary purification process that the mesh is exposed to;

n.      Contained unreasonably dangerous design defects for implantation in the breast; and

o.      Was designed and manufactured so as to present an unreasonable risk of failure when implanted in the breast with a tissue expander.

143.    At all relevant times, Defendants knew or, in the exercise of reasonable care, should have known that SERI Mesh in its intended use or in a reasonably foreseeable manner created significant risks of mesh/implant loss, inflammatory reaction, infection, seroma, hematoma, granuloma, capsular contracture, wound dehiscence, extrusion, skin flap necrosis/ulceration, lack of integration and other similar symptoms resulting in severe personal injuries, which are permanent in nature, including, but not limited to, revision/removal of SERI Mesh, lifetime complications from unremovable nonintegrated mesh, interference with imaging of breast tissue in breast cancer patients, physical pain, mental anguish, scarring and disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness proximately caused by the device; and the continued risk of requiring additional medical and surgical procedures.

144.    Defendants knew or, in the exercise of reasonable care, should have known that users or consumers of SERI Mesh, including prescribing surgeons and the medical community were unaware of the risks add the magnitude of the risks associated with the implantation of SERI Mesh when used in the breast or with breast implants or tissue expanders.

145.    Defendants breached their duty of reasonable care and failed to exercise ordinary care in the development, research, testing, design, manufacture, inspection, marketing, labeling, promotion, advertisement, packaging, distribution, supply, and sale of SERI Mesh in, among others, the following ways:

a.      Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1    exceeded the burden of taking safety measures to reduce or avoid harm;

2    b.   Designing and distributing a product in which they knew or should have

3         known that the likelihood and severity of potential harm from the product

4         exceeded the likelihood of potential harm from other device available for the

5         same purpose;

6    c.   Failing to use reasonable care in manufacturing the product and producing a

7         product that differed from their design or specifications or from other typical

8         units from the same production line;

9    d.   Failing to use reasonable care to warn or instruct, including pre-and post-sale,

10        Plaintiff, Plaintiff's physicians, or the general health care community about

11        SERI Mesh's substantially dangerous condition or about facts making the

12        product likely to be dangerous;

13   e.   Failing to perform reasonable pre-and post-market testing of SERI Mesh to

14        determine whether or not the product was safe for its intended use;

15   f.   Failing to provide adequate instructions, guidelines, and safety precautions,

16        including pre-and post-sale, to those persons to whom it was reasonably

17        foreseeable would recommend, use, and implant SERI Mesh, including

18        Plaintiff's surgeon;

19   g.   Advertising, marketing and recommending the use of SERI Mesh, while

20        concealing and failing to disclose or warn of the dangers known to or should

21        have been known to Defendants as connected with and inherent in the use of

22        SERI Mesh;

23   h.   Overpromoting SERI Mesh for use in breast procedures and/or use with

24        breast implants or tissue expanders while knowing that SERI Mesh was

25        indicated for use in the breast or use with breast implants or tissue expanders;

26   i.   Representing that their SERI Mesh was safe for its intended use when in fact,

27        Defendants knew and should have known the product was not safe for its

28        intended purpose;

00608427-3

30

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

j.     Continuing the manufacture and sale of SERI Mesh with the knowledge that the mesh is dangerous and not reasonably safe, and failing to comply with FDA good manufacturing regulations;

k.    Failing to use reasonable and prudent care in the design, research, manufacture, and development of their mesh so as to avoid the risk of serious harm associated with the use of the mesh;

l.     Advertising, marketing, promoting and/or selling SERI Mesh for uses other than as cleared and indicated in the product's label;

m.   Failing to establish an adequate quality assurance program used in the manufacturing of the mesh; and

n.    Failing to establish and maintain and adequate post-market surveillance programs.

146.   Defendants were negligent in their promotion of SERI Mesh, outside of the labeling context, by failing to disclose material risk information as part of their promotion and marketing of SERI Mesh and marketing and promoting SERI Mesh for uses other than as cleared and indicated in the products label, including the Internet, television, print advertisements, in-person promotional events, training events etc. Nothing prevented Defendants from being honest in their promotional activities, and, in fact, Defendants had a duty to disclose the truth about the risks associated with SERI Mesh in their promotional efforts, outside of the context of labeling.

147.   Despite their ability and means to investigate, study, and test the products and to provide adequate warnings, Defendants have failed to do so. Indeed, Defendants have wrongfully concealed information and have further made false and/or misleading statements concerning the safety and/or cleared indicated use of SERI Mesh.

148.   Defendants knew and/or should have known that it was foreseeable consumers and users such as Plaintiff would suffer injuries as a result of Defendants' failure to exercise ordinary care in the manufacturing, marketing, promotion labeling, distribution, and sale of SERI Mesh.

149.   Plaintiff did not know the nature and extent of the injuries that could result from the intended use of SERI Mesh in the breast or used in conjunction with breast implants or tissue expanders.

150.   Defendants' negligence was the proximate cause of Plaintiff's injuries, *i.e.,* absent Defendants' negligence, Plaintiff would not have suffered the injuries as alleged above.

151.   Defendants' conduct, as described above, was reckless. Defendants regularly marketed and promoted SERI Mesh for uses other than as cleared and indicated in the product label to consumers and users, including Plaintiff and Plaintiff's surgeon, with full knowledge of the dangers of their products when used outside the cleared indications for use. Defendants have made conscious decisions not to redesign, re-label, warn, inform or correct the misinformation concerning the cleared indications for use that was disseminated to the unsuspecting public, including Plaintiff and Plaintiff's surgeon. Defendants' reckless conduct therefore warrants an award of punitive damages.

152.   As a direct and proximate result of Defendants placing its defective SERI Mesh into the stream of commerce, and the resulting injuries, Plaintiff has sustained pecuniary loss including general damages in a sum which exceeds the jurisdictional minimum of this Court.

153.   As a proximate result of Defendants placing its defective SERI Mesh into the stream of commerce, as alleged herein, there was a measurable and significant interval of time during which Plaintiff has suffered great mental anguish and other personal injury and damages.

154.   As a proximate result of the Defendants placing its defective SERI Mesh into the stream of commerce, as alleged herein, Plaintiff sustained loss of income, and loss of earning capacity.

155.   WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

## COUNT II: STRICT PRODUCTS LIABILITY – FAILURE TO WARN

### (AGAINST ALL DEFENDANTS)

156.   Additionally, or in the alternative, if same be necessary, Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

157.   Plaintiff brings this strict liability claim against Defendants for failure to warn.

158.   At all times relevant to this action, Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting SERI Mesh, which is defective and unreasonably dangerous to consumers, including Plaintiff, because it does not contain adequate warnings or instructions concerning the dangerous characteristics of SERI Mesh. These actions were under the ultimate control and supervision of Defendants. At all relevant times, Defendants designed, researched, developed, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and distributed the SERI Mesh within California and aimed at California consumers.  ALLERGAN Defendants were at all relevant times involved in the design, manufacturer, marketing, sale and distribution of SERI Mesh marketed and sold in California.

159.   Defendants researched, designed, set specifications, manufactured, prepared, tested, assembled, processed, marketed, promoted, labeled, distributed, sold and otherwise released into the stream of commerce SERI Mesh, including the mesh implanted into Plaintiff, in the course of same, directly advertised or marketed the device to consumers and end users, including Plaintiff and Plaintiff's surgeon and therefore had a duty to warn of the risks associated with the use of SERI Mesh when used in the breast or with breast implants or tissue expanders.

160.   At all relevant times, Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain, supply, provide proper warnings, and take such steps as necessary to ensure SERI Mesh did not cause users and consumers to suffer from unreasonable and dangerous risks. Defendants had a continuing duty to warn Plaintiff and Plaintiff's surgeon of dangers associated with SERI Mesh when used in the breast or used with breast implants or tissue expanders.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1   Defendants, as manufacturer, seller, or distributor of implantable medical devices are held

2   to the knowledge of an expert in the industry.

3        161.   At the time of manufacture, Defendants could have provided the warnings or

4   instructions regarding the full and complete risks associated with SERI Mesh because they

5   knew or should have known of the unreasonable risks of harm associated with the implantation

6   of SERI Mesh, including the risks of harm associated with implanting SERI in the breast or

7   implanting SERI with breast implants or tissue expanders.

8        162.   At all relevant times, Defendants failed and deliberately refused to investigate,

9   study, test, or promote the safety or to minimize the dangers to users and consumers of their

10  product and to those who would foreseeably use or be harmed by Defendants' SERI Mesh,

11  including Plaintiff.

12       163.   Despite the fact that Defendants knew or should have known that SERI Mesh

13  posed a grave risk of harm, they failed to exercise reasonable care to warn of the dangerous

14  risks associated with its use and implantation in the breast. The dangerous propensities of their

15  product as described above, were known to Defendants, or scientifically knowable to Defendants

16  through appropriate research and testing by known methods, at the time they distributed,

17  supplied or sold the product, and were not known to end users and consumers, such as Plaintiff

18  or Plaintiff's surgeon.

19       164.   Defendants knew or should have known that their products created significant

20  risks of serious bodily harm to consumers, as alleged herein, and Defendants failed to adequately

21  warn consumers and the medical community, *i.e.,* the reasonably foreseeable users; of the risks

22  of exposure to its products. Defendants have wrongfully concealed information concerning the

23  dangerous nature of SERI Mesh when used in the breast or with breast implants or tissue expanders

24  and, further, have made false and/or misleading statements concerning the safety of SERI Mesh

25  as an implantable mesh product.

26       165.   At all relevant times, Defendants' SERI Mesh reached the intended consumers,

27  handlers, and users or other persons coming into contact with these products in California and

28  throughout the United States, including Plaintiff and Plaintiff's surgeon, without substantial

1   change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by

2   Defendants.

3       166.    Plaintiff's surgeon used and Plaintiff agreed to the use of Defendants' SERI Mesh

4   without knowledge of their dangerous characteristics.

5       167.    At all relevant times, Plaintiff and Plaintiff's surgeon used Defendants' SERI

6   Mesh product while using them for their intended or reasonably foreseeable purposes, without

7   knowledge of their dangerous characteristics.

8       168.    Plaintiff and Plaintiff's surgeon could not have reasonably discovered the defects

9   and risks associated with SERI Mesh prior to or at the time of Plaintiff had it implanted. Plaintiff

10  relied upon the skill, superior knowledge, and judgment of Defendants to know about and

11  disclose serious health risks associated with using Defendants' products.

12      169.    Defendants knew or should have known that the minimal warnings disseminated

13  with their SERI Mesh devices were inadequate, failed to communicate adequate information on

14  the dangers and safe use/exposure, and failed to communicate warnings and instructions that

15  were appropriate and adequate to render the products safe for their ordinary, intended and

16  reasonably foreseeable uses, plastic surgeons and the medical community generally.

17      170.    The information that Defendants did provide or communicate failed to contain

18  relevant warnings, contraindications, and precautions that would have enabled consumers such

19  as Plaintiff and Plaintiff's surgeon to utilize the product safely. Instead, Defendants

20  disseminated information that was inaccurate, false and misleading, and which failed to

21  communicate accurately or adequately the comparative severity, duration, and extent of the risk

22  of injuries with use of and/or implantation of SERI Mesh; continued to aggressively promote

23  the efficacy of its products, even after they knew or should have known of the unreasonable risks

24  from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive

25  marketing and promotion, any information or research about the risks and dangers associated

26  with the use of SERI Mesh in the breast or with breast implants or tissue expanders.

27      171.    This alleged failure to warn is not limited to the information contained in SERI

28  Mesh's labeling. The Defendants were able, in accord with federal law, to comply with

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

00608427-3

35

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

California law by disclosing the known risks associated with SERI Mesh through other non-labeling mediums, *i.e.,* promotion, advertisements, public service announcements, and/or public information sources. But the Defendants did not disclose these known risks through any medium.

172.    To this day, Defendants have failed to adequately and accurately warn of the risks of associated with the use of SERI Mesh when used in the breast or with breast implants or tissue expanders.

173.    To this day, Defendants have failed to accurately warn of the risks of unacceptably high failure rates of mesh/implant loss, inflammatory reaction, infection, seroma, hematoma, granuloma, capsular contracture, wound dehiscence, extrusion, skin flap necrosis/ulceration and lack of integration associated with the use of SERI Mesh.

174.    As a result of their inadequate warnings, Defendants' SERI Mesh devices were defective and unreasonably dangerous when they left the possession and/or control of Defendants, were distributed by Defendants, and used by Plaintiff's surgeon and Plaintiff during her breast surgery.

175.    Defendants are liable to Plaintiff for injuries caused by their negligent or willful failure, as described above, to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of their products and the risks associated with the use of or implantation of SERI Mesh in the breast or with breast implants or tissue expanders.

176.    Had Defendants provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with SERI Mesh, Plaintiff could have avoided the risk of developing injuries and could have decided to use a different product.

177.    As a direct and proximate result of Defendants placing its defective SERI Mesh into the stream of commerce, and the resulting injuries, Plaintiff has sustained pecuniary loss including general damages in a sum which exceeds the jurisdictional minimum of this Court.

178.    As a proximate result of Defendants placing its defective SERI Mesh into the stream of commerce, as alleged herein, there was a measurable and significant interval of

1   time during which Plaintiff has suffered great mental anguish and other personal injury and

2   damages.

3       179.    As a proximate result of the Defendants placing its defective SERI Mesh into

4   the stream of commerce, as alleged herein, Plaintiff sustained loss of income, and loss of

5   earning capacity.

6       180.    WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in

7   Plaintiff's favor for compensatory and punitive damages, together with interest, costs

8   herein incurred, attorneys' fees and all such other and further relief as this Court deems just

9   and proper.

10              **COUNT III: STRICT PRODUCTS LIABILITY – DESIGN DEFECT**

11                              **(AGAINST ALL DEFENDANTS)**

12      181.    Additionally, or in the alternative, if same be necessary, Plaintiff re-alleges and

13  incorporates by reference each and every allegation contained in the foregoing paragraphs as though

14  fully set forth herein.

15      182.    Plaintiff brings this strict liability claim against Defendants for defective design.

16      183.    At all times relevant to this action, Defendants engaged in the business of testing,

17  developing, designing, manufacturing, marketing, selling, distributing, and promoting SERI

18  Mesh, which is defective and unreasonably dangerous to consumers, including Plaintiff, thereby

19  placing SERI Mesh into the stream of commerce. These actions were under the ultimate control

20  and supervision of Defendants. At all relevant times, Defendants designed, researched,

21  developed, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed,

22  sold, and distributed the SERI Mesh used by Plaintiff's surgeon and implanted in Plaintiff, as

23  described herein.

24      184.    At all relevant times, Defendants' SERI Mesh was manufactured, designed, and

25  labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for

26  implantation in the breast for breast surgery patients, including Plaintiff.

27      185.    At all relevant times, Defendants' SERI Mesh reached the intended consumers,

28  handlers, and users or other persons coming into contact with these products in California and

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

00608427-3

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants. At all relevant times, Defendants registered, researched, manufactured, distributed, marketed, and sold SERI Mesh within California and aimed at a U.S. consumers and plastic surgeons, including California consumers and plastic surgeons. The ALLERGAN Defendants were at all relevant times involved in the marketing, distribution, and sale of SERI Mesh marketed and sold in California and marketed and sold to Plaintiff's surgeon.

186. Defendants' SERI Mesh as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants was defective in design and formulation in that, when they left the control of Defendants' manufacturers and/or suppliers, it was unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

187. Defendants' SERI Mesh as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants was defective in design and formulation in that, when it left the hands of Defendants' manufacturers and/or suppliers, the foreseeable risks exceeded the alleged benefits associated with the design and formulation.

188. At all relevant times, Defendants knew or had reason to know that SERI Mesh was defective and was inherently dangerous and unsafe when used in the manner instructed and provided by Defendants.

189. Therefore, at all relevant times, Defendants' SERI Mesh, as researched, tested, developed, designed, registered, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants was defective in design and manufacturer, in one or more of the following ways:

a. When placed in the stream of commerce, Defendants' SERI Mesh was defective in design and manufacturer, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate;

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

00608427-3

38

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

b. When placed in the stream of commerce, Defendants' SERI Mesh was unreasonably dangerous in that it posed a grave risk of mesh/implant loss, inflammatory reaction, infection, seroma, hematoma, granuloma, capsular contracture, wound dehiscence, extrusion, skin flap necrosis/ulceration, lack of integration and additional complications when used in a reasonably anticipated manner;

c. When placed in the stream of commerce, Defendants' SERI Mesh contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner;

d. Defendants did not sufficiently test, investigate, or study SERI Mesh and, specifically, bioresorption or integration of SERI Mesh when implanted in the breast or implanted with a breast implant or tissue expander;

e. Implantation SERI Mesh presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the mesh device;

f. Defendants knew or should have own at the time of marketing SERI Mesh that implanting SERI Mesh in the breast or with breast implants or tissue expanders could result in mesh/implant loss, inflammatory reaction, infection, seroma, hematoma, granuloma, capsular contracture, wound dehiscence, extrusion, skin flap necrosis/ulceration, lack of integration and other serious injuries;

g. Defendants did not conduct adequate post-marketing surveillance of its SERI Mesh products; and

h. Defendants could have employed, safer alternative designs and manufacturing.

190. Plaintiff and Plaintiff's surgeon were not aware of the dangerous characteristics of SERI Mesh at the time it was implanted in her breast.

191. At all times relevant to this litigation, Plaintiff and Plaintiff's surgeon used Defendants' SERI Mesh product in an intended or reasonably foreseeable in manner without knowledge of the dangerous characteristics associated with SERI Mesh when implanted in the breast or implanted with tissue expanders or breast implants.

192.    Neither Plaintiff nor Plaintiff's surgeon could reasonably have discovered the defects and risks associated with SERI Mesh before or at the time of implantation due to Defendants' suppression of adverse event reports or mishandling of adverse event reports relating to SERI Mesh.

193.    The harm caused by Defendants' SERI Mesh far outweighed its benefits, rendering Defendants' product dangerous to an extent beyond that which an ordinary consumer would contemplate. Defendants' SERI Mesh was and is more dangerous than alternative products, and Defendants could have designed the SERI Mesh to make it less dangerous. Indeed, at the time Defendants designed SERI Mesh, the state of the industry's scientific knowledge was such that a less risky design was attainable.

194.    At the time the SERI Mesh left Defendants' control, there was a practical, technically feasible and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of Defendants' mesh sling.

195.    Defendants' defective design of SERI Mesh was willful, wanton, fraudulent, malicious, and conducted with reckless disregard for the health and safety of users of SERI Mesh, including Plaintiff.

196.    Therefore, as a result of the unreasonably dangerous condition of their SERI Mesh, Defendants are strictly liable to Plaintiff.

197.    The defects in Defendants' SERI Mesh were substantial and contributing factors in causing Plaintiff's injuries, and, but for Defendants' misconduct and omissions, Plaintiff would not have sustained injuries.

198.    Defendants' conduct, as described above, was reckless. Defendants risked the health and wellbeing of consumers, including Plaintiff, with knowledge of the safety problems associated with SERI Mesh, and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, warn or inform the unsuspecting public. Defendants' reckless conduct warrants an award of punitive damages.

/ / /

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

199.    As a direct and proximate result of Defendants placing its defective SERI Mesh into the stream of commerce, and the resulting injuries, Plaintiff has sustained pecuniary loss including general damages in a sum which exceeds the jurisdictional minimum of this Court.

200.    As a proximate result of Defendants placing its defective SERI Mesh into the stream of commerce, as alleged herein, there was a measurable and significant interval of time during which Plaintiff has suffered great mental anguish and other personal injury and damages.

201.    As a proximate result of the Defendants placing its defective SERI Mesh into the stream of commerce, as alleged herein, Plaintiff sustained loss of income, and loss of earning capacity.

202.    WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

### COUNT IV: FRAUD

### (AGAINST ALLERGAN DEFENDANTS)

203.    Additionally, or in the alternative, if same be necessary, Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

204.    ALLERGAN Defendants defrauded the medical community in general and Plaintiff and Plaintiff's surgeon in particular by misrepresenting the true safety of SERI Mesh, the true cleared indications for use of SERI Mesh and the bioresorption characteristic of SERI Mesh by failing to disclose and report adverse events, marketing SERI Mesh for use in the breast and with breast implants and tissue expanders and claiming SERI Mesh fully bioresorbs within 24 months without and medical or scientific evidence in support of that claim.

205.    ALLERGAN Defendant misrepresented and/or failed to disclose, *inter alia,* that: there were a large number of adverse event reports associated with the use of SERI Mesh in the

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

breast, there were a large number of adverse event reports indicating SERI's failure to bioresorb or integrate when implanted in the breast, that SERI Mesh was not cleared for use in the breast or with breast implants or tissue expanders, that the study/data relied on in support of Defendants' representations that SERI Mesh bioresorbs within 24 months was flawed and/or fraudulent.

206.    Due to these misrepresentations and omissions, at all times relevant to this litigation, Defendant's SERI Mesh was misbranded under 7 U.S.C. § 136(g) and its distribution within California and around the United States was a violation of 7 U.S.C. § 136j and 40 C.F.R. §156.IO(a)(5).

207.    Plaintiff and Plaintiff's surgeon relied on the Defendants' misrepresentations and/or material omissions regarding the safety of SERI Mesh when used in the breast or with breast implants or tissue expanders in deciding whether to implant SERI Mesh during her breast surgery. Plaintiff did not know nor could Plaintiff have reasonably known of the misrepresentations and/or material omissions by Defendants concerning SERI Mesh.

208.    The misrepresentations and/or material omissions that form the basis of this fraud claim are not limited to statements made on the SERI Mesh labeling, as defined under federal law, but also involve ALLERGAN Defendants' representations and omissions made as part of its promotion and marketing of SERI Mesh, including on the Internet, television, in print advertisements, in-person promotional and educational events etc. Nothing prevented ALLERGAN Defendants from disclosing the truth about the risks associated with SERI Mesh when used in the breast or with breast implants or tissue expanders in its promotional efforts outside of the labeling context, using the forms of media and promotion ALLERGAN Defendants traditionally used to promote the product's efficacy and benefits.

209.    When ALLERGAN Defendants made the misrepresentations and/or omissions as alleged in this pleading, it did so with the intent of defrauding and deceiving the public in general and the medical community and with the intent of inducing the public and medical community, specifically plastic surgeons, to use SERI Mesh in Breast procedures and with breast implants and tissue expanders.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

210. ALLERGAN Defendants made these misrepresentations and/or material omissions with malicious, fraudulent and/or oppressive intent toward Plaintiff and the public generally. Defendant's conduct was willful, wanton, and/or reckless. Defendant deliberately recommended, manufactured, produced, marketed, sold, distributed, merchandized, packaged, promoted and advertised the dangerous and defective SERI Mesh for use in the breast and with breast implants and tissue expanders.  This constitutes an utter, wanton, and conscious disregard of the rights and safety of a large segment of the public, and by reason thereof, Defendant is liable for reckless, willful, and wanton acts and omissions which evidence a total and conscious disregard for the safety of Plaintiff and others which proximately caused the injuries as set forth herein.

211. As a proximate result of ALLERGAN Defendant's fraudulent and deceitful conduct and representations, Plaintiff has sustained damages and other losses in an amount to be proven at trial.

212. As a proximate result of ALLERGAN Defendant's fraud, as alleged herein, Plaintiff sustained a loss of income, loss of earning capacity, and property damage, including lost income.

213. WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT V: BREACH OF EXPRESS WARRANTIES

### (AGAINST ALLERGAN DEFENDANTS)

214. Additionally or in the alternative, if same be necessary, Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

215. At all times relevant to this action, ALLERGAN Defendants were engaged in the business of designing, researching, developing, manufacturing, testing, labeling, inspecting, advertising, promoting, marketing, selling, and distributing into the stream of commerce SERI Mesh

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1 for use as surgically implanted devices for soft tissue deficiencies for use in breast surgeries and for

2 uses other than as approved and indicated in the product's instructions, warnings, and labels which

3 were defective and unreasonably dangerous to consumers, including Plaintiff.  These actions were

4 under the ultimate control and supervision of ALLERGAN Defendants.

5 216. ALLERGAN Defendants had a duty to exercise reasonable care in the

6 research, development, design, testing, packaging, manufacture, inspection, labeling,

7 distributing, marketing, promotion, sale, and release of SERI Mesh, including a duty to:

8 a. ensure that its products did not cause the user unreasonably dangerous side

9 effects;

10 b. warn of dangerous and potentially side effects; and

11 c. disclose adverse material facts, such as adverse events, the true risks

12 associated with the use of SERI Mesh in the breast or with breast implants or

13 tissue expanders, when making representations to consumers and healthcare

14 providers, including Plaintiff and Plaintiff's surgeon

15 217. As alleged throughout this pleading, the ability of ALLERGAN Defendants to

16 properly disclose those risks associated with SERI Mesh is not limited to representations

17 made on the labeling.

18 218. At all relevant times, ALLERGAN Defendants expressly represented and

19 warranted to the purchasers of its products including Plaintiff and Plaintiff's surgeon, by

20 and through statements made by ALLERGAN Defendants in labels, publications, package

21 inserts, advertorials, brochures and other written materials intended for consumers and health

22 care providers, that SERI Mesh was safe for use in the breast and with breast implants and

23 tissue expanders, effective, fit, and proper for their intended use. ALLERGAN Defendants

24 advertised, labeled, marketed, and promoted SERI Mesh, representing the quality to

25 consumers and healthcare providers in such a way as to induce their purchase or use, thereby

26 making an express warranty that SERI Mesh would conform to the representations.

27 219. These express representations include incomplete warnings and instructions

28 that purport, but fail, to include the complete array of risks associated with use of SERI

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

Mesh in the breast or with breast implants or tissue expanders. ALLERGAN Defendants knew and/or should have known that the risks expressly included in SERI Mesh warnings and labels did not and do not accurately or adequately set forth the risks of developing the serious injuries complained of herein. Nevertheless, ALLERGAN Defendants expressly represented that SERI Mesh was safe and effective, that it was safe and effective for use by healthcare providers such as Plaintiff's surgeon and safe and effective for use in individuals such as the Plaintiff.

220.   The representations about SERI Mesh, as set forth herein, contained or constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, creating an express warranty that the goods would conform to the representations.

221.   ALLERGAN Defendants placed SERI Mesh into the stream of commerce for sale and recommended their use to consumers and the medical community without adequately warning of the true risks of developing the injuries associated with the use of SERI Mesh in the breast or with breast implants or tissue expanders.

222.   ALLERGAN Defendants breached these warranties because, among other things, SERI Mesh was defective, dangerous, and unfit for use, did not contain labels representing the true and adequate nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, ALLERGAN Defendants breached the warranties in the following ways:

   a.   ALLERGAN Defendants represented through its labeling, advertising, and marketing materials that SERI Mesh was safe, and fraudulently withheld and concealed information about the risks of serious injury associated with use of SERI Mesh when used in the breast or with breast implants or tissue expanders by expressly limiting the risks associated with use within its warnings and labels; and

   b.   ALLERGAN Defendants represented that SERI Mesh was safe for use and fraudulently concealed information that demonstrated that SERI Mesh had an

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1    increased risk of serious injuries, and that SERI Mesh, therefore, was not safer

2    than alternatives available on the market.

3    223.    Plaintiff and Plaintiff's surgeon detrimentally relied on the express warranties

4 and representations of ALLERGAN Defendants concerning the safety and/or risk profile of SERI

5 Mesh in making a decision to purchase the product. Plaintiff reasonably relied upon

6 ALLERGAN Defendants to disclose known defects, risks, dangers, and side effects of SERI

7 Mesh. Plaintiff and Plaintiff's surgeon would not have used SERI Mesh had ALLERGAN

8 Defendants properly disclosed the risks associated with the product, either through advertising,

9 labeling, or any other form of disclosure.

10    224.    ALLERGAN Defendants had sole access to material facts concerning the nature

11 of the risks associated with its SERI Mesh, as expressly stated within their warnings and labels,

12 and knew that consumers and users and healthcare providers such as Plaintiff and Plaintiff's

13 surgeon could not have reasonably discovered that the risks expressly included in the SERI Mesh

14 warnings and labels were inadequate and inaccurate.

15    225.    Plaintiff and Plaintiff's surgeon had no knowledge of the falsity or incompleteness

16 of ALLERGAN Defendants' statements and representations concerning SERI Mesh.

17    226.    Plaintiff and Plaintiff's surgeon used SERI Mesh as researched, developed,

18 designed, tested, manufactured, inspected, labeled, distributed, packaged, marketed, promoted,

19 sold, or otherwise released into the stream of commerce by ALLERGAN Defendants.

20    227.    Had the warnings, labels, advertisements, or promotional material for SERI Mesh

21 accurately and adequately set forth the true risks associated with the use of such products,

22 including Plaintiff's injuries, rather than expressly excluding such information and warranting

23 that the products were safe for their intended use, Plaintiff could have avoided the injuries

24 complained of herein.

25    228.    As a direct and proximate result of ALLERGAN Defendant's breach of express

26 warranty, Plaintiff has sustained pecuniary loss and general damages in a sum exceeding the

27 jurisdictional minimum of this Court.

28    / / /

229. As a proximate result of ALLERGAN Defendant's breach of express warranty, as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damages.

230. As a proximate result of ALLERGAN Defendant's breach of express warranty, as alleged herein, Plaintiff sustained a loss of income, loss of earning capacity, and property damage.

231. WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## COUNT VI: BREACH OF IMPLIED WARRANTIES

### (AGAINST ALLERGAN DEFENDANTS)

232. Additionally or in the alternative, if same be necessary, Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

233. At all times relevant to this action, ALLERGAN Defendants were engaged in the business of designing, researching, developing, manufacturing, testing, labeling, inspecting, advertising, promoting, marketing, selling, and distributing into the stream of commerce SERI Mesh for use as surgically implanted devices for soft tissue deficiencies for use in breast surgeries and for uses other than as approved and indicated in the product's instructions, warnings, and labels which were defective and unreasonably dangerous to consumers, including Plaintiff.

234. Before the time Plaintiff had the aforementioned SERI Mesh implanted, ALLERGAN Defendants impliedly warranted to its consumers and the medical community, including Plaintiff and Plaintiff's surgeon, that SERI Mesh was of merchantable quality and safe and fit for the use for which they were intended; specifically, use in breast surgeries and for use with breast implants and tissue expanders.

235. But ALLERGAN Defendants failed to disclose that SERI Mesh has dangerous propensities when used as intended and that use of SERI Mesh carries an increased risk of developing severe injuries, including Plaintiff's injuries.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

236.   Plaintiff and Plaintiff's surgeon were an intended beneficiaries of the implied warranties made by the ALLERGAN Defendants to purchasers of its medical device including consumers and the medical community such as Plaintiff and Plaintiff's surgeon.

237.   SERI Mesh was expected to reach and did in fact reach consumers and users, including Plaintiff and Plaintiff's surgeon, without substantial change in the condition in which they were manufactured and sold by ALLERGAN Defendants.

238.   At all relevant times, ALLERGAN Defendants were aware that consumers and users of its products, including Plaintiff and Plaintiff's surgeon, would use SERI Mesh as marketed by ALLERGAN Defendant, which is to say that Plaintiff was a foreseeable user of SERI Mesh.

239.   ALLERGAN Defendants intended that SERI Mesh be used in the manner in which Plaintiff, in fact, used the device and which ALLERGAN Defendants impliedly warranted to be of merchantable quality, safe, and fit for this use, despite the fact that SERI Mesh was not adequately tested or researched.

240.   In reliance upon ALLERGAN Defendant's implied warranty, Plaintiff used SERI Mesh as instructed and labeled and in the foreseeable manner intended, recommended, promoted, and marketed by ALLERGAN Defendants.

241.   Plaintiff could not have reasonably discovered or known of the risks of serious injury associated with SERI Mesh when used in the breast or used with breast implants or tissue expanders.

242.   ALLERGAN Defendants breached its implied warranty to Plaintiff and Plaintiff's surgeon in that SERI Mesh was not of merchantable quality, safe, or fit for their intended use, or adequately tested. SERI Mesh has dangerous propensities when used as intended and can cause serious injuries, including those injuries complained of herein.

243.   The harm caused by ALLERGAN Defendants' SERI Mesh far outweighed the benefit, rendering the product more dangerous than an ordinary consumer or user or healthcare provider would expect and more dangerous than alternative products.

/ / /

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

48

244. As a direct and proximate result of ALLERGAN Defendant's breach of implied warranty, Plaintiff has sustained pecuniary loss and general damages in a sum exceeding the jurisdictional minimum of this Court.

245. As a proximate result of ALLERGAN Defendant's breach of implied warranty, as alleged herein, there was a measurable and significant interval of time during which Plaintiff suffered great mental anguish and other personal injury and damages.

246. As a proximate result of ALLERGAN Defendant's breach of implied warranty, as alleged herein, Plaintiff sustained a loss of income and loss of earning capacity.

247. WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

## LOSS OF CONSORTIUM

## (AGAINST ALL DEFENDANTS)

248. Additionally, or in the alternative, if same be necessary, Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

249. Plaintiffs are married to one another and were married at the time of the injuries alleged herein. Plaintiffs are entitled to one another's comfort, care, affection, companionship, services, society, advice, guidance, and consortium.

250. WHEREFORE, Plaintiffs respectfully request this Court to enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and all such other and further relief as this Court deems just and proper.

/ / /

/ / /

/ / /

/ / /

## **EXEMPLARY DAMAGES**

### **(AGAINST ALL DEFENDANTS)**

251.     Additionally, or in the alternative, if same be necessary, Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

252.     Defendants' conduct as alleged herein was done with oppression, fraud, and malice.

253.     Defendants were fully aware of the safety risks of SERI Mesh. Nonetheless, Defendants deliberately crafted their label, marketing, and promotion to mislead consumers and surgeons, particularly, plastic surgeons.

254.     Defendants were fully aware that SERI Mesh was not indicated for use in the breast or for use with breast implants or tissue expanders. Nonetheless, Defendants deliberately crafted their label, marketing, and promotion to mislead consumers and surgeons, particularly, plastic surgeons.

255.     This was not done by accident or through some justifiable negligence. Rather, Defendants knew that it could turn a profit by convincing the plastic surgeons that SERI Mesh was safe to be implanted in the breast and with breast implants and tissue expanders, and that full disclosure of the true risks of SERI Mesh would limit the amount of money Defendants would make selling SERI Mesh in California. Defendants' objection was accomplished not only through its misleading labeling, but through a comprehensive scheme of selective fraudulent research and testing, misleading advertising, and deceptive omissions as more fully alleged throughout this pleading. Plaintiff was denied the right to make an informed decision about whether to purchase, use, or agree to have implanted a mesh product during her breast surgery, knowing the full risks attendant to that implant. Such conduct was done with conscious disregard of Plaintiff's rights.

256.     There is no indication that Defendants will stop their deceptive and unlawful marketing practices unless they are punished and deterred. Accordingly, Plaintiff requests punitive damages against the Defendants for the harms caused to Plaintiff.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the Court to enter judgment in Plaintiff's favor and against the Defendants for:

      a.  actual or compensatory damages in such amount to be determined at trial and as provided by applicable law;

      b.  exemplary and punitive damages sufficient to punish and deter the Defendants and others from future fraudulent practices;

      c.  pre-judgment and post-judgment interest;

      d.  costs including reasonable attorneys' fees, court costs and other litigation expenses; and

      e.  any other relief the Court may deem just and proper.

DATED:  February 4, 2022          **KIESEL LAW LLP**

By:      _____

          Paul R. Kiesel
          Melanie Meneses Palmer

          **THE JOEL BIEBER FIRM**
          Joel Bieber
          Melissa Hague
          Melissa Ephron

          Attorneys for Plaintiffs
          Amanda Boudreaux and Bill Boudreaux

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff demands a trial by jury on all of the triable issues within this pleading.

3

4      DATED:  February 4, 2022                    **KIESEL LAW LLP**

5

6

By:  _____

7                                                 Paul R. Kiesel
                                                  Melanie Meneses Palmer
8

9                                                 **THE JOEL BIEBER FIRM**
                                                  Joel Bieber
10                                                Melissa Hague
                                                  Melissa Ephron
11

12                                                Attorneys for Plaintiffs
                                                  Amanda Boudreaux and Bill Boudreaux
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

# EXHIBIT B

SUSAN V. VARGAS (SBN 177972)
svargas@kslaw.com
AMY P. ZUMSTEG (SBN 260242)
azumsteg@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:  +1 213 443 4355
Facsimile:  +1 213 443 4310

MARK A. SENTENAC (SBN 286810)
msentenac@kslaw.com
KING & SPALDING LLP
1800 Peachtree Street, Suite 1600
Atlanta, Georgia 30309
Telephone:      +1 404 572 4600
Facsimile:      +1 404 572 5100

Attorneys for Defendants
Allergan, Inc. d/b/a Allergan Aesthetics,
Allergan USA, Inc., and Abbvie, Inc.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| AMANDA BOUDREAUX and BILL BOUDREAUX,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ABBVIE, INC., a corporation; GLOBAL ALLERGAN AESTHETICS, a corporation; ALLERGAN, INC., a corporation; ALLERGAN USA, INC., a corporation; SOFREGEN MEDICAL INC., a corporation; and DOES 1 through 100, inclusive,<br><br>                    Defendants. | Case No.:  30-2022-01244227-CU-PL-CXC<br><br>**DEFENDANT ALLERGAN USA, INC.'S ANSWER AND DEFENSES TO PLAINTIFFS' COMPLAINT** |

Defendant Allergan USA, Inc. ("Allergan" or "Defendant"), by Counsel, answers Plaintiffs'

Complaint as follows:

## GENERAL DENIAL

Under the provisions of § 431.30 of the California Code of Civil Procedure, Defendant

denies generally and specifically each and every allegation contained in said Complaint, and the

1

whole thereof, and each and every alleged cause of action thereof, and denies that Plaintiffs have been damaged in any sum whatsoever, or at all.

## DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiffs, Defendant pleads the following defenses to the Complaint:

### First Defense

This Court lacks personal jurisdiction over Defendant.

### Second Defense

There has been insufficient service and service of process on Defendant.

### Third Defense

Plaintiffs' claims are barred to the extent that the venue is improper.

### Fourth Defense

Plaintiffs' claims are barred to the extent that the forum is improper pursuant to the doctrine of forum *non conveniens*.

### Fifth Defense

Plaintiffs' Complaint fails to state a claim against Defendant upon which relief can be granted.

### Sixth Defense

Plaintiffs' claims are barred by the applicable statute of limitations and/or statute of repose.

### Seventh Defense

Defendant is immune from liability for any conduct performed in conformance with government specifications.

### Eighth Defense

Plaintiffs' claims are barred, in whole or in part, by Defendant's compliance with the state of the art, industry standards, and/or applicable Federal and State government statutes and regulations.

### Ninth Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrines of res judicata, laches, and/or waiver.

### Tenth Defense

Defendant is liable, if at all, only for its proportionate share of liability/damages.

### Eleventh Defense

Plaintiffs' claims are barred in whole or in part by the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, the California State Constitution, and the Louisiana State Constitution.

### Twelfth Defense

To the extent Plaintiffs seek punitive damages in this action, Plaintiffs have failed to allege punitive damages with the requisite specificity.

### Thirteenth Defense

To the extent Plaintiffs seek punitive damages in this action, Defendant specifically incorporates by reference all standards and/or limitations regarding the determination and enforceability of punitive damage awards which arose in the decisions of *BMW of North America v. Gore*, 517 U.S. 559 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), and *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003).

### Fourteenth Defense

Plaintiffs' damages, if any, are barred in whole or in part by Plaintiffs' failure to mitigate such alleged damages.

### Fifteenth Defense

Plaintiffs' claims are barred in whole or in part because the commercial speech of Defendant relating to its products is not false or misleading and is protected under the First Amendment of the United States Constitution and the correlative provisions of the California Constitution and the Louisiana Constitution.

### Sixteenth Defense

Plaintiffs' claims are barred as a whole or in part to the extent that the products allegedly at issue were misused.

### Seventeenth Defense

Plaintiffs' claims are barred as a whole or in part by the learned intermediary doctrine.

### Eighteenth Defense

Plaintiffs' alleged damages, if they were caused by the product, which Defendant expressly denies, were caused by use of the product in contravention of warnings provided with it.

### Nineteenth Defense

Adequate and complete warnings and instructions were provided with the subject product, and the subject product was neither defective nor unreasonably dangerous when used according to label instructions.

### Twentieth Defense

To the extent Plaintiffs' claims are based on alleged misrepresentations or omissions made to FDA or alleged off-label promotion, such claims are barred pursuant to *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

### Twenty-First Defense

Plaintiffs' claims are barred, in whole or in part, by the principles set forth in the Restatement (Second) of Torts § 402A, Comments k and j, and relevant case law upholding and applying those provisions.

### Twenty-Second Defense

Plaintiffs' claims are barred, in whole or in part, by the principles set forth in the Restatement (Third) of Torts: Product Liability, including but not limited to Section 4 and Section 6 (including but not limited to §§ 6(c), 6(d), and comment f), and the comments thereto.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Twenty-Third Defense**

Plaintiffs' claims are barred to the extent that the injuries alleged in the Complaint were caused by a substantial change in the device after leaving the possession, custody, and control of Defendant.

**Twenty-Fourth Defense**

Plaintiffs' claims are barred because Plaintiffs were advised of the risks associated with the matters alleged in Plaintiffs' Complaint and knowingly and voluntarily assumed them.  Under the doctrine of assumption of the risk, informed consent, release, waiver, or comparative fault, this conduct bars, in whole or in part, the damages that Plaintiffs seek to recover herein.

**Twenty-Fifth Defense**

At all relevant times herein, Plaintiffs' physicians were in the position of sophisticated purchasers, fully knowledgeable and informed with respect to the risks and benefits of the device.

**Twenty-Sixth Defense**

Plaintiffs' causes of action for fraud are not factually or legally supported and, as such, Plaintiffs have no claim against Defendant as asserted. To the extent Plaintiffs' fraud claims are based on alleged misrepresentation and concealment, and the alleged conspiracy to commit those acts, the causes of action must be dismissed because Plaintiffs failed to plead allegations with the required particularity.

**Twenty-Seventh Defense**

Defendant pleads the applicability and exclusivity of the Louisiana Products Liability Act, La. Rev. Stat. § 9:2800.51, *et seq.*, and states that Plaintiffs are not entitled to recover under any of the exclusive theories of liability set forth in the Act.

### Twenty-Eighth Defense

Defendant states that SERI possesses no characteristic that renders it unreasonably dangerous in a reasonably anticipated use as defined by the Louisiana Products Liability Act, La. Rev. Stat. § 9:2800.51, *et seq.*

### Twenty-Ninth Defense

Defendant pleads all allowable defenses under the Louisiana Products Liability Act, including but not limited to all defenses under La. Rev. Stat. § 9:2800.51, *et seq.*

### RESERVATION OF RIGHTS

Defendant reserves the right to raise such further and additional defenses as may be available upon the facts to be developed in discovery and under other applicable substantive law.

### DEMAND FOR JURY TRIAL

Defendant requests a jury trial on all issues so triable.

### PRAYERS FOR RELIEF

**WHEREFORE**, having fully answered or otherwise responded to the allegations in Plaintiffs' Complaint, Defendant prays that:

(1)     Plaintiffs' Complaint be dismissed in its entirety and with prejudice, with all costs taxed against Plaintiffs;

(2)     Defendant be dismissed as a party to this action;

(3)     Defendant recovers such other and additional relief as the Court deems just and appropriate.

1    Dated:  March 17, 2022                    KING & SPALDING LLP

2

3

4                                    By:   SUSAN V. VARGAS

5                                          AMY P. ZUMSTEG
                                           MARK A. SENTENAC
6
                                           Attorneys for Defendants
7                                          ALLERGAN, INC. d/b/a GLOBAL
                                           ALLERGAN AESTHETICS, ALLERGAN
8                                          USA, INC., and ABBVIE, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PROOF OF SERVICE**

*Boudreaux v. Abbvie, Inc., et al.*
Orange County Superior Court Case No. 30-2022-01244227-CU-PL-CXC

I am a citizen of the United States, over 18 years of age and not a party to the within action. I am employed in the County of Los Angeles, California, and my business address is 633 West Fifth Street, Suite 1600, Los Angeles, CA 90071.

On March 17, 2022, I served the foregoing document in the manner described below:

**DEFENDANT ALLERGAN USA, INC.'S ANSWER AND DEFENSES TO PLAINTIFFS'
COMPLAINT**

**(BY E-MAIL):** The above-described document(s) were sent by e-mail transmission to the e-mail addresses listed below, pursuant to the parties' agreement on electronic service and in compliance with the applicable provisions of Governor Newsom's Executive Order N-38-20, dated March 27, 2020, which currently remain in effect:

| Attorneys for Plaintiffs | Attorneys for Defendant Sofregen Medical Inc. |
|---|---|
| Paul R. Kiesel, Esq. | Ellen Epstein Cohen, Esq. |
| Melanie Meneses Palmer, Esq. | Brent W. Gilbert, Esq. |
| Kiesel Law LLP | Adler \| Cohen \| Harvey \| Wakeman \| |
| 8648 Wilshire Blvd. | Guekguezian, LLP |
| Beverly Hills, CA  90211-2910 | 75 Federal Street, 10th Floor |
| kiesel@kiesel.law | Boston, MA  02110 |
| palmer@kiesel.law | ecohen@adlercohen.com |
| | bgilbert@adlercohen.com |
| Joel Bieber, Esq. | |
| Melissa Hague, Esq. | |
| Melissa Ephron, Esq. | |
| The Joel Bieber Firm | |
| Two Liberty Place | |
| 50 S. 16th Street, Suite 1700 | |
| Philadelphia, PA  19102 | |
| jbieber@joelbieber.com | |
| mhague@joelbieber.com | |
| mephron@joelbieber.com | |

1    I declare under penalty of perjury under the laws of the State of California that the foregoing

2   is true and correct.

3    Executed on March 17, 2022 in Los Angeles, California.

4

5   _____

6   Brigette S. Price

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

1   SUSAN V. VARGAS (SBN 177972)
    svargas@kslaw.com
2   AMY P. ZUMSTEG (SBN 260242)
    azumsteg@kslaw.com
3   KING & SPALDING LLP
    633 West Fifth Street, Suite 1600
4   Los Angeles, CA 90071
    Telephone:  +1 213 443 4355
5   Facsimile:  +1 213 443 4310

6   MARK A. SENTENAC (SBN 286810)
    msentenac@kslaw.com
7   KING & SPALDING LLP
    1800 Peachtree Street, Suite 1600
8   Atlanta, Georgia 30309
    Telephone:      +1 404 572 4600
9   Facsimile:      +1 404 572 5100

10  Attorneys for Defendants
    Allergan, Inc. d/b/a Allergan Aesthetics,
11  Allergan USA, Inc., and Abbvie, Inc.

12              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13                         **COUNTY OF ORANGE**

14  AMANDA BOUDREAUX and
    BILL BOUDREAUX,                        Case No.:  30-2022-01244227-CU-PL-CXC
15
                    Plaintiffs,            **DEFENDANT ALLERGAN, INC. d/b/a**
16                                         **ALLERGAN AESTHETICS' ANSWER**
            v.                             **AND DEFENSES TO PLAINTIFFS'**
17                                         **COMPLAINT**
    ABBVIE, INC., a corporation; GLOBAL
18  ALLERGAN AESTHETICS, a corporation;
    ALLERGAN, INC., a corporation;
19  ALLERGAN USA, INC., a corporation;
    SOFREGEN MEDICAL INC., a corporation;
20  and DOES 1 through 100, inclusive,
21
                    Defendants.
22

23

24          Defendant Allergan, Inc. d/b/a Allergan Aesthetics (improperly identified in the Complaint

25  as Global Allergan Aesthetics, a corporation) ("Allergan" or "Defendant"), by Counsel, answers

26  Plaintiffs' Complaint as follows:

27                              <u>**GENERAL DENIAL**</u>

28          Under the provisions of § 431.30 of the California Code of Civil Procedure, Defendant

---
                                        1
                             ANSWER TO COMPLAINT

denies generally and specifically each and every allegation contained in said Complaint, and the whole thereof, and each and every alleged cause of action thereof, and denies that Plaintiffs have been damaged in any sum whatsoever, or at all.

## DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiffs, Defendant pleads the following defenses to the Complaint:

### First Defense

This Court lacks personal jurisdiction over Defendant.

### Second Defense

There has been insufficient service and service of process on Defendant.

### Third Defense

Plaintiffs' claims are barred to the extent that the venue is improper.

### Fourth Defense

Plaintiffs' claims are barred to the extent that the forum is improper pursuant to the doctrine of forum *non conveniens*.

### Fifth Defense

Plaintiffs' Complaint fails to state a claim against Defendant upon which relief can be granted.

### Sixth Defense

Plaintiffs' claims are barred by the applicable statute of limitations and/or statute of repose.

### Seventh Defense

Defendant is immune from liability for any conduct performed in conformance with government specifications.

### Eighth Defense

Plaintiffs' claims are barred, in whole or in part, by Defendant's compliance with the state of the art, industry standards, and/or applicable Federal and State government statutes and regulations.

**Ninth Defense**

Plaintiffs' claims are barred, in whole or in part, by the doctrines of res judicata, laches, and/or waiver.

**Tenth Defense**

Defendant is liable, if at all, only for its proportionate share of liability/damages.

**Eleventh Defense**

Plaintiffs' claims are barred in whole or in part by the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, the California State Constitution, and the Louisiana State Constitution.

**Twelfth Defense**

To the extent Plaintiffs seek punitive damages in this action, Plaintiffs have failed to allege punitive damages with the requisite specificity.

**Thirteenth Defense**

To the extent Plaintiffs seek punitive damages in this action, Defendant specifically incorporates by reference all standards and/or limitations regarding the determination and enforceability of punitive damage awards which arose in the decisions of *BMW of North America v. Gore*, 517 U.S. 559 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), and *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003).

**Fourteenth Defense**

Plaintiffs' damages, if any, are barred in whole or in part by Plaintiffs' failure to mitigate such alleged damages.

**Fifteenth Defense**

Plaintiffs' claims are barred in whole or in part because the commercial speech of Defendant relating to its products is not false or misleading and is protected under the First Amendment of the United States Constitution and the correlative provisions of the California Constitution and the Louisiana Constitution.

1

### Sixteenth Defense

2    Plaintiffs' claims are barred as a whole or in part to the extent that the products allegedly at

3    issue were misused.

4

### Seventeenth Defense

5    Plaintiffs' claims are barred as a whole or in part by the learned intermediary doctrine.

6

### Eighteenth Defense

7    Plaintiffs' alleged damages, if they were caused by the product, which Defendant expressly

8    denies, were caused by use of the product in contravention of warnings provided with it.

9

### Nineteenth Defense

10   Adequate and complete warnings and instructions were provided with the subject product,

11   and the subject product was neither defective nor unreasonably dangerous when used according to

12   label instructions.

13

### Twentieth Defense

14   To the extent Plaintiffs' claims are based on alleged misrepresentations or omissions made

15   to FDA or alleged off-label promotion, such claims are barred pursuant to *Buckman Co. v.*

16   *Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

17

### Twenty-First Defense

18   Plaintiffs' claims are barred, in whole or in part, by the principles set forth in the

19   Restatement (Second) of Torts § 402A, Comments k and j, and relevant case law upholding and

20   applying those provisions.

21

### Twenty-Second Defense

22   Plaintiffs' claims are barred, in whole or in part, by the principles set forth in the

23   Restatement (Third) of Torts: Product Liability, including but not limited to Section 4 and Section

24   6 (including but not limited to §§ 6(c), 6(d), and comment f), and the comments thereto.

25

### Twenty-Third Defense

26   Plaintiffs' claims are barred to the extent that the injuries alleged in the Complaint were

27   caused by a substantial change in the device after leaving the possession, custody, and control of

28   Defendant.

### Twenty-Fourth Defense

Plaintiffs' claims are barred because Plaintiffs were advised of the risks associated with the matters alleged in Plaintiffs' Complaint and knowingly and voluntarily assumed them.  Under the doctrine of assumption of the risk, informed consent, release, waiver, or comparative fault, this conduct bars, in whole or in part, the damages that Plaintiffs seek to recover herein.

### Twenty-Fifth Defense

At all relevant times herein, Plaintiffs' physicians were in the position of sophisticated purchasers, fully knowledgeable and informed with respect to the risks and benefits of the device.

### Twenty-Sixth Defense

Plaintiffs' causes of action for fraud are not factually or legally supported and, as such, Plaintiffs have no claim against Defendant as asserted. To the extent Plaintiffs' fraud claims are based on alleged misrepresentation and concealment, and the alleged conspiracy to commit those acts, the causes of action must be dismissed because Plaintiffs failed to plead allegations with the required particularity.

### Twenty-Seventh Defense

Defendant pleads the applicability and exclusivity of the Louisiana Products Liability Act, La. Rev. Stat. § 9:2800.51, *et seq.*, and states that Plaintiffs are not entitled to recover under any of the exclusive theories of liability set forth in the Act.

### Twenty-Eighth Defense

Defendant states that SERI possesses no characteristic that renders it unreasonably dangerous in a reasonably anticipated use as defined by the Louisiana Products Liability Act, La. Rev. Stat. § 9:2800.51, *et seq.*

### Twenty-Ninth Defense

Defendant pleads all allowable defenses under the Louisiana Products Liability Act, including but not limited to all defenses under La. Rev. Stat. § 9:2800.51, *et seq.*

5

ANSWER TO COMPLAINT

1

## **RESERVATION OF RIGHTS**

Defendant reserves the right to raise such further and additional defenses as may be available upon the facts to be developed in discovery and under other applicable substantive law.

## **DEMAND FOR JURY TRIAL**

Defendant requests a jury trial on all issues so triable.

## **PRAYERS FOR RELIEF**

**WHEREFORE**, having fully answered or otherwise responded to the allegations in Plaintiffs' Complaint, Defendant prays that:

(1)     Plaintiffs' Complaint be dismissed in its entirety and with prejudice, with all costs taxed against Plaintiffs;

(2)     Defendant be dismissed as a party to this action;

(3)     Defendant recovers such other and additional relief as the Court deems just and appropriate.

Dated:  March 17, 2022                                    KING & SPALDING LLP


By:   SUSAN V. VARGAS
        AMY P. ZUMSTEG
        MARK A. SENTENAC

        Attorneys for Defendants
        ALLERGAN, INC. d/b/a GLOBAL
        ALLERGAN AESTHETICS, ALLERGAN
        USA, INC., and ABBVIE, Inc.

1

## **PROOF OF SERVICE**

2

*Boudreaux v. Abbvie, Inc., et al.*
Orange County Superior Court Case No. 30-2022-01424227-CU-PL-CXC

3

4

I am a citizen of the United States, over 18 years of age and not a party to the within action. I am employed in the County of Los Angeles, California, and my business address is 633 West Fifth Street, Suite 1600, Los Angeles, CA 90071.

5

6

On March 17, 2022, I served the foregoing document in the manner described below:

7

**DEFENDANT ALLERGAN, INC. d/b/a ALLERGAN AESTHETICS' ANSWER AND DEFENSES TO PLAINTIFFS' COMPLAINT**

8

9

**(BY E-MAIL):** The above-described document(s) were sent by e-mail transmission to the e-mail addresses listed below, pursuant to the parties' agreement on electronic service and in compliance with the applicable provisions of Governor Newsom's Executive Order N-38-20, dated March 27, 2020, which currently remain in effect:

10

11

12

| Attorneys for Plaintiffs | Attorneys for Defendant Sofregen Medical Inc. |
|---|---|
| Paul R. Kiesel, Esq. | Ellen Epstein Cohen, Esq. |
| Melanie Meneses Palmer, Esq. | Brent W. Gilbert, Esq. |
| Kiesel Law LLP | Adler \| Cohen \| Harvey \| Wakeman \| |
| 8648 Wilshire Blvd. | Guekguezian, LLP |
| Beverly Hills, CA  90211-2910 | 75 Federal Street, 10th Floor |
| kiesel@kiesel.law | Boston, MA  02110 |
| palmer@kiesel.law | ecohen@adlercohen.com |
| | bgilbert@adlercohen.com |
| Joel Bieber, Esq. | |
| Melissa Hague, Esq. | |
| Melissa Ephron, Esq. | |
| The Joel Bieber Firm | |
| Two Liberty Place | |
| 50 S. 16th Street, Suite 1700 | |
| Philadelphia, PA  19102 | |
| jbieber@joelbieber.com | |
| mhague@joelbieber.com | |
| mephron@joelbieber.com | |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1        I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

        Executed on March 17, 2022 in Los Angeles, California.

Brigette S. Price

ANSWER TO COMPLAINT

# EXHIBIT D

1     SUSAN V. VARGAS (SBN 177972)
svargas@kslaw.com
2     AMY P. ZUMSTEG (SBN 260242)
azumsteg@kslaw.com
3     KING & SPALDING LLP
633 West Fifth Street, Suite 1600
4     Los Angeles, CA 90071
Telephone:  +1 213 443 4355
5     Facsimile:  +1 213 443 4310

6     MARK A. SENTENAC (SBN 286810)
msentenac@kslaw.com
7     KING & SPALDING LLP
1800 Peachtree Street, Suite 1600
8     Atlanta, Georgia 30309
Telephone:     +1 404 572 4600
9     Facsimile:     +1 404 572 5100

10     Attorneys for Defendants
Allergan, Inc. d/b/a Allergan Aesthetics,
11     Allergan USA, Inc., and Abbvie, Inc.

12

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13

**COUNTY OF ORANGE**

14     AMANDA BOUDREAUX and
BILL BOUDREAUX,
15

                  Plaintiffs,
16

17        v.

18     ABBVIE, INC., a corporation; GLOBAL
ALLERGAN AESTHETICS, a corporation;
19     ALLERGAN, INC., a corporation;
ALLERGAN USA, INC., a corporation;
20     SOFREGEN MEDICAL INC., a corporation;
and DOES 1 through 100, inclusive,
21

22                 Defendants.

Case No.:  30-2022-01244227-CU-PL-CXC

**DEFENDANT ABBVIE, INC.'S ANSWER
AND DEFENSES TO PLAINTIFFS'
COMPLAINT**

23

24         Defendant Abbvie, Inc. ("Abbvie" or "Defendant"), by Counsel, answers Plaintiffs'
25

Complaint as follows:

26                  **GENERAL DENIAL**

27         Under the provisions of § 431.30 of the California Code of Civil Procedure, Defendant
28

denies generally and specifically each and every allegation contained in said Complaint, and the

1

whole thereof, and each and every alleged cause of action thereof, and denies that Plaintiffs have been damaged in any sum whatsoever, or at all.

## DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiffs, Defendant pleads the following defenses to the Complaint:

### First Defense

This Court lacks personal jurisdiction over Defendant.

### Second Defense

There has been insufficient service and service of process on Defendant.

### Third Defense

Plaintiffs' claims are barred to the extent that the venue is improper.

### Fourth Defense

Plaintiffs' claims are barred to the extent that the forum is improper pursuant to the doctrine of forum *non conveniens*.

### Fifth Defense

Plaintiffs' Complaint fails to state a claim against Defendant upon which relief can be granted.

### Sixth Defense

Plaintiffs' claims are barred by the applicable statute of limitations and/or statute of repose.

### Seventh Defense

Defendant is immune from liability for any conduct performed in conformance with government specifications.

### Eighth Defense

Plaintiffs' claims are barred, in whole or in part, by Defendant's compliance with the state of the art, industry standards, and/or applicable Federal and State government statutes and regulations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Ninth Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrines of res judicata, laches, and/or waiver.

### Tenth Defense

Defendant is liable, if at all, only for its proportionate share of liability/damages.

### Eleventh Defense

Plaintiffs' claims are barred in whole or in part by the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, the California State Constitution, and the Louisiana State Constitution.

### Twelfth Defense

To the extent Plaintiffs seek punitive damages in this action, Plaintiffs have failed to allege punitive damages with the requisite specificity.

### Thirteenth Defense

To the extent Plaintiffs seek punitive damages in this action, Defendant specifically incorporates by reference all standards and/or limitations regarding the determination and enforceability of punitive damage awards which arose in the decisions of *BMW of North America v. Gore*, 517 U.S. 559 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), and *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003).

### Fourteenth Defense

Plaintiffs' damages, if any, are barred in whole or in part by Plaintiffs' failure to mitigate such alleged damages.

### Fifteenth Defense

Plaintiffs' claims are barred in whole or in part because the commercial speech of Defendant relating to its products is not false or misleading and is protected under the First Amendment of the United States Constitution and the correlative provisions of the California Constitution and the Louisiana Constitution.

### Sixteenth Defense

Plaintiffs' claims are barred as a whole or in part to the extent that the products allegedly at issue were misused.

### Seventeenth Defense

Plaintiffs' claims are barred as a whole or in part by the learned intermediary doctrine.

### Eighteenth Defense

Plaintiffs' alleged damages, if they were caused by the product, which Defendant expressly denies, were caused by use of the product in contravention of warnings provided with it.

### Nineteenth Defense

Adequate and complete warnings and instructions were provided with the subject product, and the subject product was neither defective nor unreasonably dangerous when used according to label instructions.

### Twentieth Defense

To the extent Plaintiffs' claims are based on alleged misrepresentations or omissions made to FDA or alleged off-label promotion, such claims are barred pursuant to *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

### Twenty-First Defense

Plaintiffs' claims are barred, in whole or in part, by the principles set forth in the Restatement (Second) of Torts § 402A, Comments k and j, and relevant case law upholding and applying those provisions.

### Twenty-Second Defense

Plaintiffs' claims are barred, in whole or in part, by the principles set forth in the Restatement (Third) of Torts: Product Liability, including but not limited to Section 4 and Section 6 (including but not limited to §§ 6(c), 6(d), and comment f), and the comments thereto.

**Twenty-Third Defense**

Plaintiffs' claims are barred to the extent that the injuries alleged in the Complaint were caused by a substantial change in the device after leaving the possession, custody, and control of Defendant.

**Twenty-Fourth Defense**

Plaintiffs' claims are barred because Plaintiffs were advised of the risks associated with the matters alleged in Plaintiffs' Complaint and knowingly and voluntarily assumed them.  Under the doctrine of assumption of the risk, informed consent, release, waiver, or comparative fault, this conduct bars, in whole or in part, the damages that Plaintiffs seek to recover herein.

**Twenty-Fifth Defense**

At all relevant times herein, Plaintiffs' physicians were in the position of sophisticated purchasers, fully knowledgeable and informed with respect to the risks and benefits of the device.

**Twenty-Sixth Defense**

Plaintiffs' causes of action for fraud are not factually or legally supported and, as such, Plaintiffs have no claim against Defendant as asserted. To the extent Plaintiffs' fraud claims are based on alleged misrepresentation and concealment, and the alleged conspiracy to commit those acts, the causes of action must be dismissed because Plaintiffs failed to plead allegations with the required particularity.

**Twenty-Seventh Defense**

Defendant pleads the applicability and exclusivity of the Louisiana Products Liability Act, La. Rev. Stat. § 9:2800.51, *et seq.*, and states that Plaintiffs are not entitled to recover under any of the exclusive theories of liability set forth in the Act.

**Twenty-Eighth Defense**

Defendant did not design, manufacture, sell, distribute, market, or otherwise have any involvement with the SERI product alleged to be at issue.

### Twenty-Ninth Defense

Defendant states that SERI possesses no characteristic that renders it unreasonably dangerous in a reasonably anticipated use as defined by the Louisiana Products Liability Act, La. Rev. Stat. § 9:2800.51, *et seq.*

### Thirtieth Defense

Defendant pleads all allowable defenses under the Louisiana Products Liability Act, including but not limited to all defenses under La. Rev. Stat. § 9:2800.51, *et seq.*

### RESERVATION OF RIGHTS

Defendant reserves the right to raise such further and additional defenses as may be available upon the facts to be developed in discovery and under other applicable substantive law.

### DEMAND FOR JURY TRIAL

Defendant requests a jury trial on all issues so triable.

### PRAYERS FOR RELIEF

**WHEREFORE**, having fully answered or otherwise responded to the allegations in Plaintiffs' Complaint, Defendant prays that:

(1)     Plaintiffs' Complaint be dismissed in its entirety and with prejudice, with all costs taxed against Plaintiffs;

(2)     Defendant be dismissed as a party to this action;

(3)     Defendant recovers such other and additional relief as the Court deems just and appropriate.

1    Dated:  March 17, 2022                    KING & SPALDING LLP

2

3

4                                       By:   SUSAN V. VARGAS

5                                             AMY P. ZUMSTEG
                                              MARK A. SENTENAC
6
                                              Attorneys for Defendants
7                                             ALLERGAN, INC. d/b/a GLOBAL
                                              ALLERGAN AESTHETICS, ALLERGAN
8                                             USA, INC., and ABBVIE, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

*Boudreaux v. Abbvie, Inc., et al.*
Orange County Superior Court Case No. 30-2022-01244227-CU-PL-CXC

I am a citizen of the United States, over 18 years of age and not a party to the within action. I am employed in the County of Los Angeles, California, and my business address is 633 West Fifth Street, Suite 1600, Los Angeles, CA 90071.

On March 17, 2022, I served the foregoing document in the manner described below:

**DEFENDANT ABBVIE, INC.'S ANSWER AND DEFENSES TO PLAINTIFFS' COMPLAINT**

**(BY E-MAIL):** The above-described document(s) were sent by e-mail transmission to the e-mail addresses listed below, pursuant to the parties' agreement on electronic service and in compliance with the applicable provisions of Governor Newsom's Executive Order N-38-20, dated March 27, 2020, which currently remain in effect:

| Attorneys for Plaintiffs | Attorneys for Defendant Sofregen Medical Inc. |
|---|---|
| Paul R. Kiesel, Esq. | |
| Melanie Meneses Palmer, Esq. | Ellen Epstein Cohen, Esq. |
| Kiesel Law LLP | Brent W. Gilbert, Esq. |
| 8648 Wilshire Blvd. | Adler \| Cohen \| Harvey \| Wakeman \| |
| Beverly Hills, CA 90211-2910 | Guekguezian, LLP |
| kiesel@kiesel.law | 75 Federal Street, 10th Floor |
| palmer@kiesel.law | Boston, MA 02110 |
| | ecohen@adlercohen.com |
| Joel Bieber, Esq. | bgilbert@adlercohen.com |
| Melissa Hague, Esq. | |
| Melissa Ephron, Esq. | |
| The Joel Bieber Firm | |
| Two Liberty Place | |
| 50 S. 16th Street, Suite 1700 | |
| Philadelphia, PA 19102 | |
| jbieber@joelbieber.com | |
| mhague@joelbieber.com | |
| mephron@joelbieber.com | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 17, 2022 in Los Angeles, California.

Brigette S. Price

---

9

ANSWER TO COMPLAINT